No. 2420

Second Circuit

———

HARRIS ET AL. v. HENDERSON LAND, TIMBER & INVESTMENT CO., INC.

———

(March 14, 1928. Opinion and Decree.)
(November 8, 1928. Opinion and Decree on Rehearing.)

———

Murff & Perkins, of Shreveport, attorneys for plaintiffs, appellees.

Pugh & Boatner, of Shreveport, attorneys for defendant, appellant.

ODOM, J. Plaintiffs, Lawson Harris, Albert Faulkner, Lucinda House, Willie House Dickson and Jodie House Epps, allege that they own undivided interests in the southeast quarter of the southwest quarter and the southwest quarter of the southeast quarter of Section 4, Township 19, North Range 15 west, of Caddo Parish, Louisiana, which land is now claimed by the defendant, the interests claimed by plaintiffs being as follows:

Lawson Harris, an undivided one-sixteenth.

Albert Faulkner, an undivided one-sixteenth; and

Lucinda House, Willie House Dickson, and Jodie House Epps, an undivided one-forty-eighth interest each.

It is alleged that the plaintiff, Lawson Harris, is the son of Jane White, that plaintiff, Albert Faulkner, is the only son and sole heir of Buthenia White Faulkner, who was the daughter of Jane White, and that Lucinda House, Willie House Dickson and Jodie House Epps are the children and sole heirs of Peggie White House, a daughter of said Jane White, and that said Jane White was the mother of eight children, each of whom, either directly or by representation, acquired, by inheritance, an undivided interest in the property of which she died possessed.

It is also alleged that Jane White married Ad Martin in 1888 or 1889, and that during the marriage of Ad Martin made homestead entry of the above described land and made his final proof previous to the death of his wife, Jane, but that patent issued after her death, and that said property became an asset of the community between Ad and Jane Martin, so that at her death her children inherited the one-half thereof.

Defendant, in answer, denied, generally, all the allegations of plaintiffs' petition, and put at issue, specifically, the legitimacy of the plaintiff, Lawson Harris, and of the mothers of the other plaintiffs, and set up that it acquired said land by mesne conveyance from Ad Martin, the homesteader, and that the property was not community but was owned by Ad Martin individually.

There was judgment in the lower court for plaintiffs, recognizing them as owners of said land in indivision with defendant in the proportion of one-sixteenth to Lawson Harris, one-sixteenth to Albert Faulkner, and one-forty-eighth to Lucinda House, Willie House Dickson, and Jodie House Epps, each.

Defendant appealed.

### OPINION

The following points are either conceded, admitted or proved beyond question.

1. That Jane White married Ad Martin 1888 or 1889.

2. That during his marriage with Jane, Ad Martin made homestead entry of the land in question, made final proof before her death, and that patent issued after her death.

3. That the property was owned by the community which existed between him and his wife, Jane.

4. That Ad Martin sold, after the death of his wife, Jane, the entire interest in said land, to defendant's author in title.

5. That Jane White was the mother of several children when she married Ad Martin, three of whom were Lawson Harris, one of the plaintiffs, Bertha White House, the mother of Albert Faulkner, another plaintiff, and Peggie White House, the mother of the other three plaintiffs.

6. That Albert Faulkner is a legitimate child and the sole heir of his mother, Bertha White House, and that Lucinda House, Willie House Dickson, and Jodie House Epps are legitimate children and the sole heirs of their mother, Peggie White Epps.

Therefore, the only controverted point is, whether plaintiffs inherited any interest in the land from Jane White Martin.

Plaintiffs are direct descendants of Jane Martin, but they do not claim to be issue of her marriage with Ad Martin, but specifically allege "that they are not children or grandchildren of Ad Martin, but are of Jane Martin."

From the fact that these plaintiffs are direct descendants of Jane Martin, it does not follow, as a matter of law, that they inherit from her. If they are legitimate descendants, they inherit, of course.

The testimony makes it clear that Bertha White, the mother of Albert Faulkner, and Peggie White, the mother of Lucinda House, Willie House Dickson and Jodie House Epps, where legitimate children of Jane White Martin by a former marriage with John White. Jane White Martin was probably born a slave. That she was married to John White, is clear enough. There seems to be no record evidence of that fact, but William Hill, an aged colored man, who does not know how old he is but says he was born a slave and was about grown when the war between the States closed, says he was present at the marriage of John White and Jane; that they were married by a minister of the Gospel "who stood up before them and read a book." He does not know that a license was issued (and there seems to be no record of any) but recalls definitely that they were married in his presence and in the presence of others whose names he does not remember, as they have all "died out."

This is sufficient proof of the marriage. Oliphant vs. Louisiana Long Leaf Lumber Co., 163 La. 601, 112 So. 500.

Another witness, Gus Marshall, who married Jane's youngest sister, says John White and Jane were married, although he did not witness the ceremony.

These and other witnesses say that after John White and Jane were married they lived together as husband and wife, were recognized as such, and reared their children in the community where they were married.

William Hill testified that there were born of the marriage between John and Jane White the following named children: Buthenia, Elvina, Peggie, William and John. These children, it seems, were born during the marriage, except John, who was born six days after his father's death.

The testimony shows that there were two children born of the marriage between Ad Martin and Jane White whose names were Lonzo and Elijah. Jane White Martin, therefore, had seven legitimate children, five as issue of her marriage with John White, and two as issue of her marriage with Ad Martin.

While the testimony shows that Lawson Harris, one of the plaintiffs, was a son of Jane White Martin, it fails to show that he was a legitimate child. He was not born of or during either marriage.

William Hill, who seemed to know all the children of the former marriage, named them, but did not name Lawson. John White, a son of Jane by her first husband, said Lawson was his brother, that his mother always claimed him as her son, but specifically stated that he was not born during or out of the marriage with John White, Sr. The witness said that he himself was the youngest of the White children and was born six days after his father's death, and that Lawson was born several years after he was. Asked why Lawson went by the name of Harris, the witness said he did not know but it was probably because he had a different father.

There is testimony that while Lawson is Jane's child, yet she did not rear him. He was reared by his grandmother. Sarah Jane White's testimony makes it perfectly clear that Lawson was not the son of John White, Jane's first husband. There is no testimony to show that he was Jane's child by her second marriage. Not only that, but it is specifically alleged that he is not the son of Ad Martin. Lawson Harris' mother was married but twice, first to John White and then to Ad Martin. He not being a child of either marriage, is not legitimate, and cannot inherit from his mother.

Testimony was introduced tending to show that he was acknowledged by his mother. Even so, he cannot recover, because his mother had seven legitimate children.

"Illegitimate children, though duly acknowledged, cannot claim the rights of legitimate children."
C. C. Art. 206.

"Natural children are called to the legal succession of their natural mother, when they have been duly acknowledged by her, if she has left no lawful children or descendants."
C. C. Art. 918.

The Judge of the lower court erred in holding that Lawson Harris inherited an interest in said land from his mother, Jane.

Our finding is, that Jane White Martin had seven legitimate children who inherited directly or by representation her one-half community interest in the land in controversy, and that Bertha White Faulkner, the mother of Albert Faulkner, and Peggie White House, the mother of Lucinda House, Willie House Dickson and Jodie House Epps, were two of her seven legitimate heirs.

Proceeding now to render such judgment as should have been rendered in the first instance, it is, for the reasons assigned, ordered, adjudged and decreed that the judgment appealed from be and the same is hereby reversed and avoided, in so far as the same recognizes Lawson Harris as an heir and entitled to inherit from Jane White Martin, and his demands are rejected. It is further ordered, adjudged and decreed that Albert Faulkner, the sole surviving heir of Bethenia White Faulkner, be and he is hereby recognized and decreed to be the owner of an undivided one-fourteenth interest and that Lucinda House, Willie House Dickson and Jodie House Epps, the sole surviving heirs of Peggie White House, be and they are hereby recognized and decreed to be the owners each of an undivided one-forty-second interest in and to the southeast quarter of the southwest quarter and southwest quarter of southeast quarter of Section 4, Township 19, North Range 15, West in Caddo Parish, Louisiana.

It is further ordered and decreed that the rights of the plaintiffs herein recognized as owners of undivided interests in said land to sue for the use of said property and the timber cut and removed therefrom, be reserved, and that the demands of Ad Martin, intervenor, be rejected at his costs. Defendant to pay all other costs.