## DUTY v. FOWLER COMMISSION CO., Inc.
### No. 4395.

Court of Appeal of Louisiana, Second Circuit.

March 6, 1933.

Dimick & Hamilton, of Shreveport, for appellant.

Harry V. Booth, of Shreveport, for appellee.

TALIAFERRO, Judge.

Plaintiff, alleging herself to be the surviving widow of Jim Duty, deceased, brought this suit to recover compensation on account of his death on February 11, 1931, while in the employ of defendant. She alleges that she and Duty were married in Bossier City, La., in February, 1906, that they were living together at the time of his death, and that there were no children as the issue of their marriage.

Defendant answered, and denied that plaintiff and Jim Duty were married.

All issues in the case were disposed of at time of trial by agreement of counsel, except that involving the marriage. The case was tried on this issue alone. The lower court found that the evidence established the existence of the marriage in question, or, at least, was sufficient to create a strong presumption of such marriage, which was not rebutted, for judgment was rendered in favor of plaintiff awarding her compensation. Defendant has appealed.

It is admitted that the official records of Bossier and Caddo parishes do not show the issuance or record of a marriage license between Jim Duty and Savanah Robison, the plaintiff.

Plaintiff testified that she and deceased were married in Bossier City by Judge Fuller in the year 1906, and named Charley Long and Isabella Campbell as two of the parties present at the ceremony. She further stated that at time of her marriage she owned a Bible in which she made a memorandum of the marriage at time it took place. This Bible was produced by her and filed in evidence. The memorandum referred to reads as follows: "Savanah Robison married February 8, 1906." This is in her handwriting, and has the appearance of not being recently written. There is also the following entry on one of the flyleaves of this Bible: "Savanah Robison, Arcadia, Louisiana, May 1, 1900." This is in the handwriting of plaintiff, and also has the appearance of being done many years ago. In 1900 plaintiff lived in Arcadia, La.

Two witnesses, Charley Long and Isabella Campbell, sworn on behalf of plaintiff, testified they were present when plaintiff and Jim Duty were married by J. P. Fuller, justice of the peace in Bossier City in the year 1906. They both state that the officiating magistrate had a paper in his hand while performing the ceremony, and one recalls him asking, "Do you take this woman as your wife?"; and the other recalls him saying, "I pronounce you man and wife." These witnesses knew the parties well at the time, and continued to live in the same community with them for many years after the marriage.

One witness, a barber in Bossier City in 1906, testified that Duty came to his shop immediately prior to the wedding and told him he was going to marry Savanah, and that he (the witness) cut his hair, shaved him, and "fixed him up" for the ceremony. This witness also stated that Judge Fuller often sent him on horseback to Benton, the parish seat, to

get marriage licenses from the clerk of court for both white and colored people. The widow of the justice of the peace testified that her husband invariably procured a marriage license before he would perform a wedding ceremony. Such action on his part would be presumed anyway.

The record shows conclusively that the deceased and plaintiff, beginning with the year 1906, lived together continuously and publicly as man and wife until his death; that they were so regarded by friends and acquaintances in Bossier City and in the city of Shreveport, where they lived for the seventeen years prior to his death; that she was introduced by Duty to his friends as his wife, and was so designated by him in a policy of insurance on his life wherein she was named the beneficiary. There is not any evidence in the record that in the least tends to contradict these facts, and no suggestion is made that in the least affects their verity.

All of the testimony offered to prove the marriage in question was objected to by defendant on the ground that it had not been shown that a license issued authorizing the celebration of the marriage. The testimony was admitted subject to the objection, and, we assume, the lower court reached the conclusion, after the case was closed, that the testimony was admissible, under the circumstances, and gave weight to it.

Appellant plants itself upon two propositions in its effort to defeat plaintiff's suit:

(1) That the law of Louisiana does not admit any proof of marriage except that of compliance with its provisions; that is, the issuance of a license, celebration by an authorized person, and the return and recordation of the license and act of celebration. Until this has been done, or evidence of the loss of the documentary evidence has been produced, no secondary evidence of marriage is admissible.

(2) That, even if the law of the state did permit of secondary evidence to establish a marriage, in the absence of proof of issuance of license authorizing same, the testimony adduced in this case does not establish that a marriage was celebrated between plaintiff and deceased.

Defendant's counsel in brief states that the jurisprudence of this state on the question is confusing. We fully agree with this. They say: "The early jurisprudence of Louisiana upon this question is somewhat confusing. There are cases which hold that oral proof of the celebration of marriage can be adduced, and there are some that even hold that proof of long cohabitation, acknowledgment by the husband, recognition in the community, can be shown in the absence of the record proof required by law. However, the latest decisions are to the contrary."

We shall not attempt to review both lines of jurisprudence on this important question. There is marked lack of uniformity in the decisions. The early cases, to some extent, held that the codal provisions regulating the contract of marriage were merely directory, while cases of a later date recurred to the Code and held that these laws should be strictly complied with in order to constitute a lawful marriage. The last expressions of the Supreme Court are in line with the early pronouncements on this question. These hold that it is not indispensable to the establishment of the marriage contract that it must be first shown that a license issued, as provided by law, and some sort of ceremony performed. They hold that public cohabitation for a series of years, as man and wife, accompanied by acts and conduct indicative of such relation, the man introducing the woman as his wife and otherwise referring to her as such, creates a strong presumption of marriage. They also hold that it is not necessary, as a condition precedent to the introduction of secondary evidence to establish a marriage, that it first be shown that a license issued, followed by a celebration of the marriage.

The latest decision of the Supreme Court on these questions is that of Succession of Anderson, 145 So. 270, 275. In that case no marriage license or act of celebration of the marriage of Anderson to the mother of the claimant, Mrs. Irene Anderson Delsa, was found; nor was it proven that the license issued, or that the parties were married, yet it was held by the court that the evidence introduced in the case created a presumption of marriage, which was not rebutted, and therefore Mrs. Delsa was recognized as the legitimate daughter of her reputed father. The court said: "It is well established in this jurisdiction, as it is, we think, in others, that a marriage, in the absence of higher evidence, may be established by general reputation. * * * Therefore the evidence offered by Mrs. Delsa to prove the marriage of Anderson and Emma Schwartz by general reputation was admissible. Such being the case, we think it clear that the evidence adduced fully justifies the presumption of marriage, and therefore the presumption of the legitimacy of Mrs. Delsa to which presumptive marriage she traces."

This doctrine found approval in Succession of St. Ange, 161 La. 1085, 109 So. 909, the third section of the syllabus reading: "When a man introduces a woman as his wife, calls her his wife, and lives with her publicly as such, marriage is presumed."

This case quotes approvingly from John Blasini et al. v. Succession of Silvestre Blasini, 30 La. Ann. 1388, in which it was held: "Where a man introduces a woman to his friends as his wife, calls her his wife,

and he and she live together publicly as man and wife until her death, and their children, born while they are thus living together, are baptized, reared and educated as their legal offspring, the law will presume that they had been lawfully married, and that their children are legitimate, until it is shown that no marriage between them ever took place, or that it was void on account of some nullity established by law."

This ruling is cited with approval in Powers v. Charbmury's Ex'rs, 35 La. Ann. 630, 637; Bennett v. Cignoni, 41 La. Ann. 1145, 1147, 8 So. 544; Bothick v. Bothick, 45 La. Ann. 1383, 14 So. 293; Succession of Benton, 106 La. 494, 503, 31 So. 123, 59 L. R. A. 135.

In the case of Harris et al. v. Henderson Land, Timber & Investment Co., 9 La. App. 129, 119 So. 494, a marriage was held to have been established on the testimony of one old negro who stated he was present at the ceremony. In that case the issuance of a license was not established. The syllabus of the case correctly reflects the court's holding. It is as follows: "Evidence of a witness that the parties were married many years ago by minister of gospel in his presence and in the presence of others whose names he does not remember is sufficient proof of marriage where parties thereafter cohabited as man and wife for many years."

██ Where it is shown, as in this case, that persons competent to enter into a contract of marriage have publicly lived together for a quarter of a century, in or near the community wherein they claim to have married, and they have been recognized by their friends and neighbors as man and wife, and their daily life and conduct discloses no other relation than that usual to husband and wife, a very strong presumption arises in support of the contention that such persons were in reality married; and, when these facts are supported by the evidence of two witnesses who testify that they were present at the wedding of such persons, the presumption is so strengthened as to render almost not debatable the question of the marriage; and this is true, even though the issuance of a license authorizing such marriage be not proven.

Defendant refers to and quotes from two recent decisions of this court, which, it contends, support the position taken by it in this case. These are: Spillman v. T. & P. Ry. Co., 17 La. App. 473, 135 So. 66; Brown v. T. & P. Ry. Co., 18 La. App. 658, 138 So. 221.

In each of these cases the plaintiff sued under article 2315 of the Civil Code. It was not alleged or proven that there had been a legal marriage between plaintiff and the deceased in the first case, nor between plaintiff's mother and father in the second, and no effort whatever was made to establish the issuance of a license or the performance of a marriage ceremony in either case; nor was it suggested in either case that any of said documents ever existed and were lost, nor that the records had been searched and said documents or record thereof could not be found. No serious effort was made in either case to establish the presumption of marriage by general reputation.

In both of these cases the court followed, and was largely influenced by, the decision in Green v. New Orleans, S. & G. I. Ry. Co., 141 La. 120, 74 So. 717. In that case the Supreme Court, through Justice Monroe, held that under article 105 of the Civil Code, as amended, the rules of evidence governing the introduction of secondary proof to establish any contract required by law to be in writing applied to marriages; that this article of the Code required the issuance of a license by the clerk of court authorizing the marriage before it could be legally entered into by the parties, and that the officiating officer or clergyman should return the same with the act of celebration to the officer issuing the license for recordation; that to establish a marriage the proponent should produce a certified copy of these written documents; that no secondary evidence to establish the marriage is admissible until the loss or destruction of the primary evidence has been established. This ruling followed the Code literally.

Subsequent decisions of the Supreme Court in effect overrule the doctrine laid down in the Green Case. It was expressly overruled in the case of Oliphant v. Louisiana Long Leaf Lumber Company, 163 La. 601, 112 So. 500, 502. In that case the court said:

"In our opinion it was not the intention of the Legislature by requiring the license to be issued in duplicate, and that the act evidencing the celebration of the marriage be thus made, and that one of the duplicate acts, attached to one of the duplicate licenses, be returned, for recordation, to the officer issuing the license, to exclude parol evidence of the celebration of the marriage, especially to exclude the testimony of eyewitnesses. The intention of the Legislature in requiring that these things be done was to make it easier to establish a marriage by increasing the means and facilities of proof, and not to limit the means thereof by excluding parol evidence of the celebration, especially the evidence of eyewitnesses.

"Marriage lies at the very foundation of our social fabric. It ought not to be held that a marriage cannot be proved without first proving that a license issued, that an act showing the celebration was prepared and returned, and that all evidence thereof has been lost or destroyed, or that the celebrant thereof failed to make a return, before parol evidence becomes admissible to establish the fact of marriage, without positive legislation to that effect."

In the present case, the record shows that

due search has been made in the proper offices for the license and celebration of marriage between plaintiff and her deceased husband, and neither could be found. We do not think it was ever the intention of the lawmaker to preclude any one, in such circumstances, from falling back on secondary evidence to establish a marriage, and particularly do we not think that in such a case the lips of witnesses present at the marriage are forever closed to bear witness of such fact simply because some one has failed to discharge the duty imposed upon him by law in regard to the return of the license and act of celebration to the proper office, or in regard to registry of same after being so returned.

Defendant sought to introduce evidence to establish a marriage by Jim Duty before he married the plaintiff. The evidence was excluded on objection that it was not admissible under the pleadings. We think the ruling of the lower court correct. That issue was not raised by defendant's answer. The purpose of the offering was to attempt to prove that the marriage of plaintiff and Duty was bigamous.

We think plaintiff has established by competent evidence, under the controlling jurisprudence of this state, her marriage to Jim Duty, and therefore the judgment appealed from is affirmed.