**DOUGLAS et al. v. SHEPARD.**

No. 6099.

Court of Appeal of Louisiana. Second Circuit.

Dec. 1, 1939.

Wade & Wade, of St. Joseph, for appellant.

Young & Watson, of St. Joseph, for appellees.

DREW, Judge.

The issues of this case are correctly set out in the following opinion and judgment of the lower court:

"Plaintiffs filed suit against defendant praying for the annulment of a certain judgment rendered in re Estate of Henry Douglas, in which the defendant, Mary Douglas Shepard, was recognized as the sole heir of the said Henry Douglas, deceased, and placed in possession of the following described real property. situated in the Parish of Tensas, State of Louisiana, to-wit:

" 'Lot No. 14 of the Nebraska Plantation, according to a map of the said Nebraska Plantation made by John Snyder, Jr., in 1888, and duly recorded in Deed Book K page 698, Recorder's Office of this Parish, to which said map so recorded, reference is hereby made for particular and accurate description, it being understood that the description of the above mentioned and numbered lots, according to said map, shall govern. The said lot No. 14 containing in the aggregate 50¼ acres.'

"Plaintiffs further prayed to have set aside an ex parte judgment rendered in re Estate of Lucy Martin Douglas in which the defendant, Mary Douglas Shepard, was recognized and placed in possession as

sole heir of an undivided one-half interest. in and to the hereinabove described property.

"Plaintiffs further prayed that a certain deed from Mary Douglas Shepard to Lucy Martin Douglas, recorded in Notarial Book S, page 64 of the records of Tensas Parish, Louisiana, be annulled and ordered stricken from said records.

"It appears from the evidence that Mary Brown Douglas was first married to one Jack Douglas, who died intestate in the year 1872, there being born issue of said marriage one child, namely, John Douglas, who died intestate, leaving as issue of his marriage a child named Will Douglas, one of the petitioners herein.

"It was alleged by plaintiffs that Mary Brown, widow of Jack Douglas, married Henry Douglas in the spring of 1880, and that there was born issue of said marriage the following named children: Sam Douglas, Frances Douglas Ritley, Clara Douglas Banks, Eliza Douglas Clayton and Governor Douglas, petitioners herein; Cicero Douglas, another son of said marriage, died intestate in 1918, leaving two children, said children being named Helene Douglas and Sidney Douglas, also petitioners herein. Mary Brown Douglas died intestate in 1891.

"In 1893, Henry Douglas married one Lucy Martin, of which marriage there was born issue one child, Mary Douglas Shepard, defendant herein, being the wife of Joe Shepard. Lucy Martin Douglas died intestate in October, 1937.

"Henry Douglas acquired from H. R. Steele on December 15, 1890, by deed recorded in Notarial Book L, page 144 of the records of Tensas Parish, Louisiana, the property hereinabove described and which is the subject of this litigation. The value of said real estate is declared to be $1500.00. Henry Douglas died intestate in 1917.

"Plaintiffs contend that the various proceedings mentioned hereinabove, conveying this property, have deprived them of their rights as heirs and that said proceedings are therefore erroneous, illegal and should be annulled and ordered cancelled from the records; that they should be recognized as heirs and placed in possession of the property of Henry Douglas and Mary Brown in the proportions provided and prescribed by law for such heirs. . . .

"The principal and practically the only question at issue in this suit is whether or not Henry Douglas was married to Mary Brown at the time the property in question was acquired by him, so as to cause the same to become a part of the community of acquets and gains. If there was a marriage, then the plaintiffs are legitimate heirs of this estate; if there was no marriage, then the children born to Henry and Mary have no interest in said estate because they would be illegitimate.

"Plaintiffs, in support of the contention that there was a valid marriage, produced a witness, named John Rogers, an old negro, who stated that he was about 79 years old. This witness related substantially the following facts; that he was present at the marriage, which was held on the Sommerset Plantation; that it was held at the home of Henry Douglas; that the ceremony was performed by 'Elder Sullivan', the pastor of the church at that time, and being the same church attended by the witness and Douglas. This witness was not clear in his recitation of the details of the ceremony, but did state that he was a Deacon in the church at that time, and further testified that 'the church was forcing the law on members to marry about 1880'. He stated that, 'I saw the marriage read', and that the wedding was at night. He was vague as to the size of the crowd, but remembered that the people were laughing and playing. Considering the fact that the witness was reciting events that occurred almost 60 years ago, his recollection was very good and should be considered above the average.

"Mat Johnson, another witness for plaintiffs, stated that he had been living in Tensas Parish since 1870, and had known Henry Douglas since 1866, the witness being about seven years of age at that time. On cross-examination, he stated that the marriage took place in 1881. He was evidently rather young and his testimony was contradictory as to his age. He remembered that he 'was spying around when they sot the table' and he enjoyed himself eating cake and drinking wine. He further stated that the wedding was in the evening, near night. He did not actually attend the wedding, as he stated he was 'out scouting', whatever that may mean. He recalled a few additional details, but was very vague as to actual occurrences. His testimony concerning a marriage license can be given

very little or no weight, as it was to all intents and purposes, hearsay.

"The testimony of Mat Johnson, taken alone, would have small evidential value, but it does serve to corroborate the testimony of the witness John Rogers. There was no evidence as to whether or not a license had even been issued and no license or marriage record was introduced by either party to the suit; it can therefore be presumed that no such record was available and that this higher species of evidence did not exist.

"In order to evaluate such testimony, it is necessary to compare it with the construction that the courts have placed on this type of parol evidence. In the case of Oliphant v. Louisiana Long Leaf Lumber Company, 163 La. 601, 112 So. 500, 501, the Court said:

"'Marriage is regarded · by our law in no other light than as a civil contract, highly favored, and depending essentially on the free consent of the parties capable by law of contracting. Our Code does not declare null a marriage not preceded by a license, and not evidenced by an act signed by a certain number of witnesses and the parties; nor does it make such an act exclusive evidence of a marriage. These laws relating to forms· and ceremonies, here regarded as directory to those alone who are authorized to ·celebrate marriages, are .intended to guard against haste and inconsiderate marriages in defiance of parental authority. Like all other contracts, it may be proved by any species of evidence not prohibited by law, which does not presuppose a higher species of evidence within the power of the party.'

"It seems to be the settled jurisprudence of this state that every effort should be made to keep intact the marriage bonds. The law makes a definite attempt to find grounds for declaring a marriage legal, even when the parties do not strictly comply with the requirements set up by the Code.

"'Marriage may be proved by any species of evidence not prohibited by law, which does not presuppose a higher species of evidence in the power of the parties; cohabitation as man and wife furnishes a presumptive evidence of a preceding marriage.' Flemming v. Jones, Orleans Appeal Dig. 84, No. 8155, see Louisiana and Southern Digest.

"'In absence of proof of marriage celebration, marriage may be shown by evidence that parties held themselves out as married persons, under circumstances sufficient to raise presumption of marriage.' Boykin v. Jenkins, 174 La. 335, 140 So. 495.

"'Public cohabitation for 25 years as man and wife, accompanied by acts indicating marriage relationships, created strong presumption of marriage.' Civil Code, Article 105; Duty v. Fowler Commission Company, Inc., La.App., 146 So. 336.

"'Marriage may be circumstantially established by fact that for considerable time parties have openly lived together as man and wife and * * * acquire reputation of being husband and wife; such cohabitation and reputation being presumptive evidence of marriage.' Succession of Tyson, 186 La. 516, 172 So. 772.

"'Evidence of a witness that the parties were married many years ago by minister of gospel in his presence and in the presence of others whose names he· does not remember, is sufficient proof of marriage where parties thereafter cohabitated as man and wife for many years.' Harris v. Henderson Land, Timber & Investment Company, Inc., 9 La.App. 129, 119 So. 494.

"In the instant case, two witnesses definitely and positively stated that Henry Douglas and Mary Brown were married and that they were either actually present or at the site of the ceremony. While the testimony varies and while they were not able to give all the details of the occasion, the evidence is deemed by this Court as sufficient to substantiate the allegations that these parties were married.

"In the case of Harris v. Henderson Land, Timber & Investment Company. Inc., supra, the Court said:

"'The testimony makes it clear that Buthenia White, the mother of Albert Faulkner, and Peggie White, the mother of Lucinda House, Willie House Dickson, and Jodie House Epps, were legitimate children of Jane White Martin by a former marriage with John White. Jane White Martin was probably born a slave. That she was married to John White is clear enough. There seems to be no record evidence of the fact, but William Hill, an aged colored man, who does not know how old he is, but says he was born a slave, and was about grown when the war between

the states closed, says he was present at the marriage of John White and Jane; that they were married by a minister of the gospel, "who stood up before them and read a book." He does not know that a license was issued (and there seems to be no record of any), but recalls definitely that they were married in his presence and in the presence of others, whose names he does not remember, as they have all "died out." ' "

"It was shown that these parties had lived together as husband and wife until separated by the death of Henry Douglas.

"It is, therefore, held by this Court that there was a valid and binding marriage by and between the said Henry Douglas and the said Mary Brown and that the heirs, issue of said marriage, are therefore legitimate children of this couple, with the exception hereinbelow stated.

"There was considerable testimony relative to the long lapse of time that ensued between the death of Mary Brown Douglas and the filing of this suit and there was an attempt made to show what caused this delay. Most of the testimony concerning the delay was secured from Mary Douglas Shepard, defendant, and from Sam Douglas, one of the plaintiffs. This evidence is definitely contradictory and this Court is not inclined to give weight or credence to what either witness testified to. Both witnesses appeared to be fabricating many of the details. In any event, the delay is of little consequence in the determination of the major question in this suit—the plea of estoppel in pais made by defendant is overruled.

"With reference to the legitimacy of Sam Douglas, it would appear from the testimony of the witness himself that he was born prior to the marriage of Henry Douglas and Mary Brown. Counsel for defendant very logically pointed out that the events recited by the witness in proof of his age would not bear close scrutiny, inasmuch as the witness would have been approximately two years of age at the time stipulated. While the law endeavors to approve legitimation by permitting the introduction of testimony of doubtful weight, yet in this instance the Court is of the opinion that the proof submitted in this case is not of sufficient value to establish the legitimacy of the said Sam Douglas.

As to the other plaintiffs, the proof of legitimacy is considered adequate.

"It is ordered, adjudged and decreed that there be judgment herein annulling and ordering stricken from the records of Tensas Parish the judgment in re Estate of Henry Douglas, which recognized Mary Douglas Shepard as the sole heir of decedent; annulling and ordering stricken from the records of Tensas Parish that certain judgment in re Estate of Lucy Martin Douglas, hereinabove referred to; annulling and ordering stricken from the records of Tensas Parish that certain deed from Mary Douglas Shepard to Lucy Martin Douglas, recorded in Notarial Book S, page 64, of the records of Tensas Parish, Louisiana, conveying an undivided one-half interest in certain property.

"It is further ordered that, with the exception of Sam and Will Douglas, petitioners and Mary Douglas Shepard be recognized as sole heirs of Henry Douglas, and as such, they be sent into possession as co-heirs of all the property of his estate in the proportions prescribed under the laws of this state and pertaining to such heirs.

"It is further ordered that with the exception of Sam Douglas, petitioners be recognized and sent into possession, as sole heirs of Mary Brown Douglas, in the proportions prescribed under the laws of this state, said heirs being: Frances Douglas Ritley, Clara Douglas Banks, Eliza Douglas Clayton, Governor Douglas, Helen Douglas, Sidney Douglas and Will Douglas; costs to be paid by defendant.

"Judgment read, rendered and signed in the Town of St. Joseph, Parish of Tensas, State of Louisiana, on this the 17th day of July, A. D., 1939.

"Frank Voelker, Judge,
"Sixth Judicial District of Louisiana."

From this judgment, defendant has prosecuted this appeal.

A careful study of the record and the law applicable to the facts found therein convinces us of the correctness of the judgment of the lower court. We therefore adopt the opinion of the lower court as the opinion of this court.

The judgment appealed from is affirmed, with costs.