Plaintiffs, Jessie Holland, Willie Holland, Ed. D. Shannon and Annie Wiley, alleging themselves to be the sole heirs (children) of Narcisse Holland, deceased, who at the time of her death on August 12, 1938, was living with Tom Holland as his wife, brought this suit against Nancy Beasly Holland, the surviving lawful widow of Tom Holland, whom he married on January 18, 1939, to be decreed the owners of and sent into possession of the following described property, situated in Natchitoches Parish, Louisiana, to-wit:
Lots One, Two and Three of Block "HA" of the Breda Heights Addition to the City of Natchitoches, Louisiana; undivided one-half interest in a time certificate deposit of a bank for $60, in the name of Tom Holland, and like interest in and to some household goods, a shotgun, etc., alleged to be in the possession of the defendant.
The plaintiffs further alleged that the lots were purchased by their deceased mother from J.E. Breda on May 6, 1933, and became her separate and paraphernal property as the price thereof was paid from her own separate and paraphernal funds; that the personal property and time certificate deposit were assets of the community between their deceased parents. However, plaintiffs, who alleged themselves to be heirs of Tom Holland, deceased, in Article VI of their petition expressly renounce their interest as such heirs in and to all of the property described in the petition, which in effect, was a renunciation of their interest in his succession.
It clearly appears from the record that plaintiffs, Ed. D. Shannon and Annie Wiley, are illegitimate children of Narcisse by a man named George Shannon, with whom she cohabited prior to the beginning of conjugal relations between her and Tom Holland.
Plaintiffs pray that their said interest in said property be recognized and they be sent into possession thereof; that the personal property be sold by licitation to effect a partition between the co-owners; that the bank that issued the time certificate deposit be ordered to pay one-half thereof to them.
In her original answer, defendant avers that when she married Tom Holland in the year 1939 he had certain household goods and effects, which she named, and the shot gun, but did not have the quantity listed in the petition; that the household goods that Tom had when she married him are now in her possession, save two sheets and one quilt she gave to a relative who nursed Tom in his last illness.
Defendant denies that the lots were the separate property of Narcisse and avers, on the contrary, that same were purchased with community funds and therefore, went into the community between her and Tom Holland, if they were married, which fact she denies. She further avers that said lots sold for taxes due the City of Natchitoches for the year 1934 and were purchased by one Harold Kaffie, who on May 24, 1941, sold the lots to Tom Holland, at which time she and Tom were living together as man and wife under the community regime. She further avers that she is without any property save one lot assessed at $50, and that she is therefore in necessitous circumstances and entitled to payment of the dowry of $1,000 from her husband's succession effects as provided by Article 3252 of the Revised Civil Code; that the only property left by Tom Holland at his death consisted of the lots, the household property and the time certificate deposit of $60. She prays for judgment against the succession of Tom Holland, deceased, in the sum of $890, the amount of dowry claimed by her less the lot she owned and the time certificate deposit.
By supplemental answer, defendant alleged that Tom Holland and Narcisse were never married; that Narcisse was Tom's concubine, and, therefore, their children are not lawful heirs but are adulterous bastards; that the said lots and the time certificate deposit are assets of the community between her and Tom, as surviving widow in community and as his sole heir (he having left no legal heirs nor ascendants), all of said property is now owned by her.
The prayer of the defendant in the supplemental petition is that the demands of the plaintiffs be rejected; that she be recognized *Page 140 
as owner of one-half interest in the lots and in the time certificate deposit as surviving widow in community and that as heir of her deceased husband she be decreed to own the other one-half interest in the lots and certificate, the entirety of the household goods and any other property owned by Tom Holland at time of his death. In the alternative, she prays that she be recognized as widow in necessitous circumstances and decreed entitled to be paid $1,000 from the sale of the property owned by Tom Holland at the time of his death.
By supplemental petition, in the alternative, should it be found and held that petitioners are not legal children and heirs of Tom Holland and Narcisse, and for that reason, did not inherit from their mother as such heirs, they, nevertheless, inherited from her as her natural and/or acknowledged children. They re-adopt and reassert the prayer of their original petition and further pray, alternatively, in consonance with the allegations of the amended petition.
The lower court held that under the evidence in the case Tom Holland and Narcisse never married. It found and held that there was no impediment to a marriage between them; that she had in many ways acknowledged the plaintiffs as her children and as such they were entitled to inherit from her. The court further found that the deed from Kaffie to Tom and Willie Holland was not a redemption of the tax sale to Kaffie, but an outright sale of the property. It further held, in effect, that as Willie Holland sued herein only as heir of his mother, he would be held to his pleadings and not allowed to recover any interest in the lots under the deed from Kaffie.
The judgment decreed plaintiffs to own one-half interest in the property described in their petition and decreed defendant to own the other one-half thereof. The property was ordered sold to effect a partition between the co-owners. Defendant appealed. Answering the appeal, plaintiffs pray for amendment of the judgment to the effect that they be recognized and decreed to be the owners of the entirety of the three lots.
The first issue to be solved is that which involves the affirmed and denied marriage of Tom Holland and Narcisse.
An illegitimate son of Narcisse, by a man named Armstrong, born before she cohabited with George Shannon, who says he was 82 years old at time of trial, testified that he was present at the marriage of his mother, Narcisse, and Tom, and that it occurred about eight miles from Shreveport on the east side of Red River. He says a minister performed the ceremony and that he had a marriage license. If the marriage took place where this witness says it did, it was in Bossier Parish. It is not shown that a search of the records of that parish was made to find evidence of the marriage. This witness testified twice in the case. His first testimony was equivocal, and leads one to believe that the marriage occurred in Caddo Parish. However, the records of that parish were searched and no evidence of the marriage was found.
These parties began to live together as man and wife, as nearly as we can tell, prior to the year 1900. Tom died in October, 1944. They had four children, two of whom survive them, — plaintiffs in this case. The dead children left no issue. With little dissent Tom and Narcisse were looked upon by neighbors and friends as man and wife. They reared their children as though they were legitimate and each took the surname of "Holland". Their relations, mode of living and attitude toward the society in which they moved bore the indicia of lawful wedlock. Tom was a minister of the Baptist faith. He was active in furthering the cause of the church he represented and held many pastorates. It is shown that this church requires that its ministers be lawfully married to the woman with whom they live. A strong presumption of marriage arises from the testimony in the case. It proves continued, uninterrupted and apparently happy co-habitation of the parties. The parties themselves often to friends and their children stated that they were married. *Page 141 
[1, 2] Testimonial proof offered to establish the relationship of the parties, and other facts supporting or tending to support the contention that Tom and Narcisse were lawfully married, was objected to. We think the trial judge properly admitted the testimony, but we disagree with him in his ultimate conclusion as to the marriage. The record facts warrant a presumption of marriage, and from this conclusion it follows that Willie and Jessie Holland are legal heirs of their parents.
This same question was discussed and passed upon in Duty v. Fowler Commission Co. Inc., La. App., 146 So. 336, and in Douglas et al. v. Shepard, La. App., 193 So. 264. An array of cases on the subject is cited in these two opinions. In Harris et al. v. Henderson Land, Timber Investment Co., Inc., 9 La. App. 129, 119 So. 494; Id., 9 La. App. 279, 119 So. 893, as reflected from the syllabus, it was held: "Evidence of a witness that the parties were married many years ago by minister of gospel in his presence and in the presence of others whose names he does not remember, is sufficient proof of marriage where parties thereafter cohabitated as man and wife for many years."
The next issue to be solved is the character of the instrument executed by Harold Kaffie to Tom and Willie Holland. If that act is in effect a redemption of the tax sale to Kaffie, the title of the lots would be restored to the status enjoyed prior to the date of the tax sale; but if the instrument is in reality a sale, as on its face it purports to be, a holding to that effect perforce eliminates from consideration some of the questions affecting title to the lots, that are based upon facts antecedent to the date of the tax sale.
[3] The character and effect of the act signed by Kaffie must be determined from the language of the instrument itself. It is not alleged that the act does not truly reflect the intentions of the parties thereto nor is it charged that fraud or error to any extent influenced its confection. Parol testimony offered, objected to, but admitted subject to the objection, to prove that the act was in reality a redemption of the tax sale, was not admissible for that purpose. Mr. Kaffie's testimony, if considered, however, rather supports the contention that he intended to vest title in Tom Holland. In part, he says: "It was my purpose to return it (the lots) to Tom Holland at as near what it had cost me during that time as possible."
The price expressed in the act is more than the aggregate of taxes, etc., paid by Kaffie on the property, including the tax sale and thereafter.
[4, 5] The period in which a tax sale may be redeemed is three years from recordation of the deed. The tax sale involved herein had been of record over five years when Kaffie conveyed the lots to the Hollands. If the tax sale was affected with original infirmities these had been cured by the peremption or prescription of five years. Therefore, it follows that Kaffie's title to the lots, at the date of his conveyance to the Hollands, had ceased to be inchoate and was not subject to be effaced by redemption, in that redemption could not have been enforced.
It may be true, as contended, that the lots with improvements when conveyed by Kaffie to the Hollands had a value in excess of the price expressed in the deed, but that was a matter that concerned only Kaffie. For reasons satisfactory to himself, he was willing to accept the amount for his title to the lots and has not complained of the inadequacy of the price. He, himself, at this date would have no standing to challenge the validity of the deed he signed on account of price inadequacy.
[6, 7] It is, therefore, our opinion that the deed from Kaffie vested in Tom and Willie Holland each one-half interest in the lots, and that the interest thus acquired by Tom went into and became an asset of the community between him and defendant. On his death, her community portion, being one-fourth, devolved upon her.
[8] Article 1017 of the Revised Civil Code declares that the act of renunciation by an heir must be passed before a notary public and two witnesses, but the Supreme Court has held that this method of renunciation is not exclusive, and that it may be done in judicial proceedings. See Carter *Page 142 
(Congreve et al.) v. Fowler et al., 33 La. Ann. 100; Union National Bank v. Choppin et al., 46 La. Ann. 629, 15 So. 304.
[9] Therefore, by renouncing their interest in their father's succession property, expressed in the petition herein, Willie and Jessie Holland lost their father's community interest (one-fourth.) in and to the lots in question. Upon whom such interest devolved as the effect of the renunciation the record does not disclose. The owner or owners of such interest are not before the court.
[10] We further conclude that because Willie Holland sued only in the capacity of heir of Narcisse does not preclude him from being recognized as owner of the one-half interest in the lots acquired by him under the Kaffie deed. In suing as he did, he was evidently laboring under error of law or of judgment by which he is not bound, especially to the extent of stripping him of his rights under the deed to him and his reputed father. He evidently was in error as to the extent of his interest in the lots and the source of such interest.
The time certificate deposit issued to Tom Holland on January 24, 1944. One for the same amount was issued to him by the same bank on August 17, 1938. It is contended by plaintiffs that this one issued in lieu of one of same amount in the name of Narcisse Holland, that the one in controversy was in lieu of the one issued August 17, 1938, and that for this reason, the present certificate is the separate property of Narcisse's estate.
[11] For several years prior to the death of Narcisse she received monthly checks from the Government in payment of insurance on the life of her son, Ezekiel Holland, who died in World War One. It is claimed that the certificate that issued to her represented an investment of part of this insurance money. The testimony is not conclusive that the certificate in question represents money paid to Narcisse by the Government. During this time Tom was also receiving insurance money from the Government on account of his son's death. All things considered, we are constrained to hold that the certificate in question fell into the community between defendant and Tom Holland. This being true, one-half of it belongs to defendant and the owner of the other one-half, is presently unknown to this court.
[12] It is conceded that the household goods and shot gun are assets of the community between Tom and Narcisse. As heirs of their mother, Willie and Jessie Holland own one-half interest therein.
For the reasons herein given, the judgment appealed from is reversed and set aside and there is now judgment in favor of plaintiff, Willie Holland, recognizing and decreeing him to be the owner of an undivided one-half interest in the lots involved herein with improvements thereon, described as follows: Lots One, Two and Three of Block "HA" of the Breda Heights Addition to the City of Natchitoches, Louisiana.
It is further adjudged and decreed that defendant, Nancy Holland be, and she is hereby recognized and decreed to be the owner of an undivided one-fourth interest in said lots and improvements thereon.
It is further adjudged and decreed that defendant be and she is hereby recognized and decreed to be the owner of one-half interest in and to the time certificate deposit for $60 involved herein, with accumulated interest.
It is further adjudged and decreed that plaintiffs, Willie and Jessie Holland be, and they are hereby recognized and decreed to own one-half interest in the household goods and the shot gun described in the judgment from which appealed.
It is further ordered, adjudged and decreed that the demands of Ed. D. Shannon and Annie Wiley be, and the same are hereby rejected.
It is further ordered, adjudged and decreed that the rights of defendant, Nancy Holland, as widow in necessitous circumstances, of Tom Holland, deceased, against his succession and the assets thereof be and the same are hereby reserved to her.
[13] Inasmuch as all owners of the property described herein are not now before the court, the petition thereof cannot be presently ordered. It will be necessary that this cause be remanded to the lower *Page 143 
court for the purpose of impleading the other owner or owners interested in said property to the end that a decree ordering a partition thereof may be binding upon each and every person interested in the property; and it is so ordered.
It is further ordered, adjudged and decreed that the costs of appeal to this court be paid in equal proportion by Willie Holland, Nancy Holland and Jessie Holland.