120 So.2d 465

Karl R. EWALD, Jr., et al.

v.

Joseph L. HODGES et al.

No. 44007.

April 25, 1960.

Rehearing Denied May 31, 1960.

E. L. Guidry, Jr., St. Martinsville, Helm, Simon, Caffery & Duhe, New Iberia, for plaintiffs-appellants.

Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, Elmo P. Lee, Shreveport, Landry, Watkins, Cousin & Bonin, New Iberia, Simon Herold, Herold, Cousin & Herold, Shreveport, for defendants-appellees.

HAMLIN, Justice.

From a judgment of the trial court recognizing the defendants (other than Mrs. Georgia Shaw Pender Lauve and Humble Oil & Refining Company) to be the owners of certain described land located in the Parish of Iberia, State of Louisiana, and rejecting the demands of plaintiffs and the defendant Georgia Shaw Pender Lauve, plaintiffs appeal.

The trial judge, in his well-considered reasons for judgment, correctly and exhaustively recited the complicated pleadings and issues of the instant matter as follows:

"This action involves the title of a tract of land in the Atchafalaya Basin in Iberia Parish described as E½ of Section 23, E½ of Section 26, and E½ of Section 35 in Township 12 South, Range 11 East, of the Southwestern Land District of Louisiana.

"The plaintiffs claim that their ancestor, James M. Muggah, patented this land from the United States of America in 1848 and never disposed of it. They allege that the defendants pretend to have acquired the property by inheritance from Sidney L. Herold, Elmo P. Lee and William H. Hodges, Jr., who are alleged to have acquired it in an act of sale from Riggs Cypress Co., Ltd., in Liquidation and William Davis on June 24, 1921.

"The plaintiffs claim that this pretended muniment of title is null and void because the vendors did not, at any time, own any interest in the property.

"Alleging that defendants have executed mineral leases on the land, as owners, the plaintiffs pray that they have judgment decreeing them, the plaintiffs, to be the owners of the property and cancelling these mineral leases and the inscriptions of the pretended title of the defendants from the public records of this Parish.

"Mrs. Georgia Shaw Pender, the wife of Sidney Love [Lauve], was alleged to be a

co-owner with the plaintiffs. She did not join the plaintiffs so they made her a defendant. She later appeared and adopted plaintiffs' petition as her own. She may be therefore considered a plaintiff.

"Also made a defendant was the Humble Oil & Refining Company, a corporation. It filed an appearance to state that it had mineral leases upon the property from all of the plaintiffs and all of the defendants and that it did not choose to join issue with either in this litigation over the title of the property.

"Plaintiffs also claim that neither they nor the defendants are in possession of the tract of land, hence the title thereto should be determined under the provisions of LS A–R.S. 13:5062, but, in the alternative, should it be determined that the defendants are in possession then the title to the land should be determined in accordance with the rules pertaining to petitory actions.

"The defendants joined issue with the plaintiffs on their claim of ownership and claim to have acquired the property through any one of several alternative modes. They claim to have acquired it through William Davis, who was a tax adjudicatee of the property for non-payment of the 1919 taxes, as well as through a sale thereof by Riggs Cypress Co., Ltd., the tax debtor. In the alternative, they claim to have acquired title by means of the ten and the thirty years' prescription.

"The defendants plead certain acts of commission and omission of plaintiffs' ancestors in title to defeat plaintiffs' claim of ownership and to establish title in themselves.

"The positive acts, they claim, show that James M. Muggah, who had patented this property, transferred it to his brother, Charles R. Muggah, because in the Succession of Charles R. Muggah, James P. Muggah, the son of James M. Muggah, was the Administrator and A. B. Wadsworth, the son-in-law of James M. Muggah, became surety on the administrator's bond and in that succession the property involved here was inventoried as belonging to the Estate of Charles R. Muggah; that James P. Muggah, the administrator, presented the inventory to the court and secured an order for convoking a meeting of the creditors of the estate and James P. Muggah participated in this meeting both individually and in his capacity as dative testamentary executor of the Estate of James M. Muggah, and also as agent and attorney in fact for Mrs. Julia C. Muggah, the second wife and surviving widow of James M. Muggah; all of whom presented monetary claims against the Estate of Charles R. Muggah and voted as creditors that the property be sold to pay the debts; that in due course the property was sold and purchased by James P. Muggah, the Administrator.

"The defendants contend that James P. Muggah was an author of their title in that

he transferred the property to the Riggs Cypress Co., Ltd., from whom their ancestors purchased it.

"The negative acts that the defendants rely on to show that James M. Muggah had transferred this property to his brother, Charles R. Muggah, are that neither James M. Muggah nor his heirs, the plaintiffs in this suit and their ancestors in title, ever asserted any title to the property and that the said property was not inventoried in the Succession of James M. Muggah nor in any succession of his descendants; that none of the said parties ever had the property assessed to them nor did they pay taxes thereon since long prior to the year 1856; that the present defendants were not aware that plaintiffs had the remotest claim to the property herein sued for.

"In the sale by James P. Muggah, and those associated with him in the timber and sawmill business, to the Riggs Cypress Company, Ltd., which was made in the year 1906, the vendors sold to the Riggs Cypress Co., Ltd. all of their timber lands in the lower parishes of Louisiana and although the lands in controversy were sold, the deed failed to describe them. The defendants claim that this was an oversight and that the deed should be reformed so as to specifically include the description of the lands in controversy. They ask that a judgment be rendered herein reforming the deed.

"The defendants further claim that some of the plaintiffs, or their ancestors in title, were stockholders in the Riggs Cypress Co., Ltd. and that they knowingly received their proportionate share of the proceeds of the sale of this property when the Riggs Cypress Co., Ltd., sold it to Sidney L. Herold, Elmo P. Lee and William H. Hodges, Jr. and thereby estopped themselves from now claiming title to the property.

"The plaintiffs answer these contentions by arguing that the defendants' ancestors acquired no title in the sale from Riggs Cypress Co., Ltd. because the company did not have any title. It did not have title they claim because James P. Muggah and the others who attempted to sell it, the property, did not own it. They claim that the Estate of James M. Muggah, the original patentee, and its present heirs still own the title.

"The plaintiffs also claim that the tax sale to William Davis for the unpaid taxes of the year 1919 through which the defendants claim was null and void because the assessment of this property to the tax debtor, Riggs Cypress Co., Ltd., for that year was cancelled prior to the sale.

"As to defendants' plea of prescription, the plaintiffs contend that the defendants have not acquired title through the ten and thirty years' prescription because neither the defendants nor any of their ancestors in title have ever had the actual physical possession of the property in the manner required to acquire property by prescription.

"As to defendants' plea of the ten-year acquisitive prescription, plaintiffs maintain

that the defendants cannot successfully plead it for additional reasons. The first is that Riggs Cypress Co., Ltd. did not have a deed translative of title. Another is that Mr. Herold and his associates, if they ever had possession, did not possess the property uninterruptedly for a continuous period of ten years. Plaintiffs base this contention on two tax sales to the State after Mr. Herold's acquisition of the property. Mr. Herold and his associates purchased from Riggs in June, 1921. On September 16, 1922 the property was adjudicated to the State in the name of William Davis as the tax debtor for the unpaid taxes of 1921. The property was redeemed December 6, 1935. Again, on October 17, 1936 it was forfeited to the State in the name of Mr. Herold and his associates for the unpaid taxes of 1935. This adjudication was redeemed on April 26, 1937.

"These adjudications, plaintiffs contend, interrupted all of the acts of physical possession that preceded them, notwithstanding the provisions of Act 310 of 1936 (LSA–R.S. 9:5803). The reason why this legislative enactment, intending to prevent tax adjudications to the State from interrupting possession, does not apply to the defendants, plaintiffs claim, is because it applies only to purchasers in good faith, and Mr. Herold and his associates were not purchasers in good faith.

"The Act provides in part:

" 'In all cases where immovable property has been, or may be, adjudicated or forfeited to the State for non-payment of taxes and has been or is subsequently redeemed by a *purchaser in good faith* and by just title, or by the heirs or assigns of such purchaser, prescription shall not be interrupted or suspended during the period that title is vested in the State. * * *' (Italics for emphasis.)

"For the same reason the plaintiffs challenge defendants' plea of thirty years' prescription. Even if the defendants could claim the benefit of Riggs' possession, which originated in 1909, and tack it on Mr. Herold's and his associates' possession, the thirty years' prescription would not operate until the year 1939. The tax sales were in 1922 and 1936.

"The reason the plaintiffs claim that Mr. Sidney L. Herold and his two associates were not in legal good faith is because they, or someone in their behalf, made an examination of the conveyance records to investigate the title to the property before purchasing it from Riggs Cypress Co., Ltd. and William Davis. The records, plaintiffs claim, reveal that they and not Riggs were the true owners.

"In the course of the trial it was shown that the property in controversy is swamp land, located in the Atchafalaya Basin. It is lowland, subject to overflow, and un-

inhabitable. The first timber operations, of which we have evidence, was started in 1909. It continued until about the year 1912. The large cypress trees were taken off the land in that operation. It was conducted by Riggs Cypress Co., Ltd. The property was assessed to Riggs in 1906, and continued to be so assessed until 1919, when it was sold for taxes to William Davis, the liquidator. Riggs paid the taxes yearly. After the sale to Mr. Herold and his two associates, the property was assessed to them.

"In the year 1934 Norman-Breaux Lumber Company cut and removed the small cypress, tupelo and gum trees from this land under a lease, or contract, it had with Mr. Herold and his associates. The latter also leased the property for the exploration of minerals, and conducted other minor activities on it.

"These facts show that the property is in the possession of the defendants. The plaintiffs do not claim that they are in possession of it, and there are no facts to warrant such a claim.

■ "The action must therefore be considered as a petitory action. The plaintiffs must recover on the strength of their own title, and they have exhibited an act of acquisition in the name of their ancestor. The acquisition of the patentee, and their ancestor, James M. Muggah, still stands, undivested, in the conveyance records. The present plaintiffs have shown that they are the legal survivors of James M. Muggah and, as such, entitled to the property belonging to his succession. They are entitled to be recognized as owners of the property in controversy unless the defendants can show a superior title, or unless they, (the plaintiffs) or their ancestors, have been divested of the title in favor of the defendants, or unless they are estopped from asserting their title against the defendants.

"The defendants have exhibited a title emanating from Riggs Cypress Co., Ltd. and William Davis. Davis' title is through the controversial tax sale. It is claimed that Riggs acquired its title from James P. Muggah, the son of the patentee, James M. Muggah, in 1906. There are two flaws in that title that strike it with considerable uncertainty. The first is that Muggah acquired it from his uncle's succession, Charles R. Muggah, but it is not shown that Charles R. Muggah ever acquired it from the patentee, James M. Muggah. The other flaw is that in the sale where it is claimed Riggs acquired it from James P. Muggah, the property is not described. The defendants claim that the tenor of the sale shows that it was Muggah's intention to sell, and of Riggs' intention to buy, this property in that sale. * * *"

■ From the above facts, the trial judge found that it was impossible to read

into the provisions of the sale of April 19, 1906, from James P. Muggah to Riggs Cypress Company, Ltd., any intention to include the property in controversy. An examination of the act of sale convinces us of the correctness of his finding. The property was neither described nor included in the voluminous transfer. Such being the case, the deed was not subject to reform.

Proceeding to a consideration of the tax sale of the property for unpaid taxes of the year 1919, to William Davis, Liquidator for Riggs Cypress Company, Ltd., the trial judge found the sale to be valid. Controverting his finding, appellants set forth in brief the following assignment of errors:

"1. The trial court erred in holding that a tax sale, invalid for want of assessment, was immune from attack under the peremption provided for in Article 10, Section 11, of the Louisiana Constitution of 1921 [LSA-Const.], unless the plea of want of assessment be based on the assertion that the property was not sufficiently described in the assessment to identify it.

"2. The trial court erred in holding that an assessment for State and Parish taxes, although voided and cancelled by the Tax Assessor under authority of Section 68 of Act 170 of 1898, as amended (now L.R.S. Title 47, Section 1991), was sufficient to support a subsequent tax adjudication covering the property described in the cancelled assessment.

"3. The trial court erred in its holding that the record contains no evidence indicating that the assessment under which the property here in litigation was sold at tax sale in the year 1920 was voided prior to the tax adjudication under proper authority by the then Tax Collector of Iberia Parish.

"4. The trial court erred in failing to recognize that a general presumption of validity attaches to acts of public officials.

"5. The trial court erred in holding as valid and as vesting title in the adjudicatee a tax sale covering property claimed by a corporation in liquidation and bought in at such tax sale by one of the liquidators of the corporation with funds belonging to the corporation."

All of the above specifications were raised in the trial court. We agree with the findings and conclusions of the trial judge, and we quote with approval the following portions of his reasons for judgment:

"The tax sale is stricken with two notable imperfections and it is these that make it the subject of so much controversy. In the first place, the tax purchaser was one of the three liquidators of Riggs Cypress

Co., Ltd., the tax debtor; and in the second place, the tax and assessment records contain entries indicating that the assessment of the property was voided prior to the sale. These two defects can be the subject of far-reaching arguments because of the large amount of jurisprudence on the subject-matter, and because of the peremption provisions of our Constitution designed to fortify tax sales against imperfections as well as our policy to protect those who rely on conveyance records in their dealings with immovables. It is our task here to determine whether the legal provisions which establish the infirmities of the tax sale shall prevail, or whether it will be those which are intended to set them at rest.

"We shall first consider the claim that the sale was not supported by a valid assessment and whether this defect was cured by the constitutional peremption of three years and five years, which defendants plead, as well as defendants' contention that this point cannot be successfully pleaded against an innocent purchaser who purchased on the face of the public records.

"The facts are that on the assessment rolls for the year 1919, (P–22) the year for whose taxes the property was sold, there appear brackets, made in ink, along the description of the property sold and the word 'void', near the brackets. There is, apparently, a new computation of the amount of taxes in each of the columns of the roll, which, it seems was made necessary by the removal of the property, from the roll, and the words '(Aff. State Auditor)'. All these are in ink. The new computations evidently were necessary because Riggs Cypress Co., Ltd. had other lands and these were not affected by the notations. All were assessed as one unit. When the tax collector made his rendition, after his tax collections were complete, he reported the deduction. He also reported, and properly remitted, the amount of tax he collected through the sale of the property to Davis.

"Thus there was an apparent cancellation of the assessment of the property and also a tax sale of it under the same assessment. The rolls do not show another, or separate, assessment of the property.

"The plaintiffs contend that the notations and renditions revealed by the tax rolls show that there was not any assessment of the property to support the sale. They cite cases holding that a tax sale not based on an assessment is void and is not protected by the constitutional peremption. The cases they rely on are: Hester et al. Vs. Louisiana Tax Commission et al., 227 La. 1022, 81 So.2d 381; Guillory Vs. Elms, 126 La. 560, 52 So. 767; Close et al. Vs. Rowan et al., 171 La. 263, 130 So. 350; Woosley Vs. Louisiana Saw Mill Co., 172 La. 999, 136 So. 31; Tillery Vs. Fuller et al., 190 La. 586, 182 So. 683.

"The first of these cases, Hester Vs. Louisiana Tax Commission et al., 81 So. 2d 381, 227 La. 1022, is not in point because the issue there involved was the application of statutory provisions regulating the assessments of bridges across the Mississippi River. There was not involved the validity of a tax sale and the applicability of the constitutional peremption.

■ "The cases of Guillory Vs. Elms, 126 La. 560, 52 So. 767; Close et al. Vs. Rowan et al., 171 La. 263, 130 So. 350, and Tillery Vs. Fuller et al., 190 La. 586, 182 So. 683 involve the sufficiency of the description of property sold for taxes. It is true that a tax sale in which the property is not susceptible of identification is not susceptible of enforcement. As the description of the property in the sale is usually the same that is carried on the assessment roll the deficiency is attributable to the assessment roll as well as to the act of sale. In discussing the many cases on this point our Appellate Courts have said that this deficiency is tantamount to no assessment. They have so regarded such assessments and have held that the peremption provisions of our Constitutions do not cure this defect. Hence, lack of assessment has been added to the constitutional exceptions that are not cured by peremption.

. * * * * * *
"Although the discussions in some of the cases liken the assessment to a mandate

and say that without an assessment the tax collector has no authority to act, (he possesses only the powers of an ordinary citizen) and the tax sales he makes under this condition convey no property, our Supreme Court has not unequivocally so held. In the case of Weber's Heirs Vs. Martinez, 125 La. 662 [663], 51 So. 679, the Court said: .

" '* * * As to the plaintiffs' allegation that no taxes were due, the answer is that it being admitted that none were paid, and it not being pretended that the property was exempt, the taxes were necessarily due, provided there was an assessment, and the tax debtor is barred by the constitutional prescription from contesting the fact of the assessment, save in connection with the assertion that the description in the tax deed and in the assessment fail to identify the property. * * *'.

■ "From this language it must necessarily be inferred that the lack of an assessment is not a fault that survives the peremption, unless it is based on the assertion that the property was not sufficiently described to identify it. The court says so in so many words." See, Egle v. Constantin, 198 La. 899, 5 So.2d 281; Quatre Parish Co. v. Beauregard Parish School Board, 220 La. 592, 57 So.2d 197; Gayle v. Slicer, 188 La. 940, 178 So. 498;

Esso Standard Oil Company v. Jordan, 231 La. 594, 92 So.2d 377.

■ "But however this may be, we are concerned here, at best with an irregularity in the assessment. Actually, what happened was that the taxes were not paid on a portion of the property and it was sold at tax sale. The taxes were paid and accepted on the balance of the property that was assessed in the same unit. Generally, property assessed as a unit is considered one assessment. Irregularity of assessment is one of the faults that is cured by peremption.

"Returning to a consideration of the cases plaintiffs cite, we find the last case, Woosley vs. Louisiana Saw Mill Co., 136 So. 31, 172 La. 999, involves the assessment of timber separate from the land on which it stands. That decision is authority only for the point that timber and the land on which it stands can be assessed separately and when they are so assessed they constitute two estates and may be sold for taxes separately.

■ "Here, the plaintiffs contend there was no assessment of the property to support the sale because it was voided prior to the sale. Their contention is based on the notations made in ink on the records. These notations can hardly be given this effect. We have no information about them, other than they are there. How, why or by whom they were written is unknown. One of the interesting things about them is there was no apparent reason why the property should not continue to be on the assessment rolls as it had been since 1906. There were no transactions concerning it that would justify the entry. * * * The entry is * * * not an official act, and is not entitled to the legal presumption of validity with which official acts are generally clothed. It is only a memorandum. At best, it can only serve to put one on notice that some official action had been taken affecting the assessment. But we do not have any evidence that any official action was taken. That is what would control; not the notation.

"Act 170 of 1898, Section 68, as amended by Act 315 of 1910, was the law in existence at the time that directed how assessments could be cancelled. It provided:

"'Be it further enacted, etc., that upon statement of the facts, made under oath and verified and approved by the assessor and collector of the Parish or district in which the property is situated, that the assessment is a clerical error, or an erroneous or double assessment, or that the property is exempt by Article 230 of the Constitution from taxation, the auditor may authorize the Collector to cancel the assessment on the roll on file in his office, and the recorder of mortgages to erase and cancel the inscription of

the tax mortgage. In case the property has been sold for taxes and adjudicated to a third party the Auditor shall authorize the Recorder of conveyances to cancel the sale. In case however the property has been bid in for the adjudication to the State, the Register of the State Land Office shall cancel the sale upon his records and direct the recorder of conveyances to cancel the act or deed of adjudication upon his. All costs and fees entailed by said erroneous or double assessment shall be deducted from the amount coming to the assessor upon any settlement made with him by the State for his compensation under Sections (2) two and (3) three of this act.'

"Under these provisions the cancellation of an assessment originated in an affidavit made for the purpose. It required the approval of the assessor and the tax collector. The grounds for the procedure were: (1) clerical error, (2) erroneous or double assessment, or (3) that it was exempt from taxation. The approved affidavit was submitted to the State Auditor and the final decision rested with him, for the act provided that he 'may' authorize the cancellation. The order of the auditor is the official act that results in the cancellation. His act is not authorized, however, unless the assessor and the tax collector had theretofore con-

curred. We have no evidence of this concurrence. On the contrary, it would appear that the tax collector did not concur, for he sold the property. Considerable doubt is cast on the procedure, also, because it is apparent that its assessment was not a clerical error, erroneous or double assessment and it was not exempt from taxation.

"If we were to hold that the assessment was cancelled because of the notations we find on it, we would be doing so blindly, accepting as a fact the existence of a series of official acts of which we have no proof, and which, under the circumstances would appear unjustified. We would likewise deprive the tax sale of its inherent legal presumption of validity created in its favor by article 233 of the Constitution of 1898 [LSA–Const.], then in force, providing that 'All deeds of sale made, or that may be made, by the collectors of taxes, shall be received by courts in evidence as prima facie valid sales.'

"In Slattery et al. vs. Heilperin & Leonard, 110 La. 86, 34 So. 139, our Supreme Court refused to give effect to unidentified notations on public records. Its holding on the point is stated in Syllabus 11 [by the Court] which reads:

" '11. An indorsement across the face of a land patent, issued by the State, reciting: "This location errone-

ous, null and void. Warrant returned to locator," received in evidence over objection, does not, of itself, suffice to prove erroneous location, nor the nullity of the patent, nor that the warrant was returned to the locator.'

"This holding is approved in the cases of Foster vs. Meyers, 117 La. 216, 41 So. 551 and Scheen et al. vs. Hain et al., 141 La. 606, 75 So. 427.

"The defendants timely objected to the introduction of these notations in evidence. The ruling on their admissibility was withheld so that the court could properly investigate the question. It seems obvious now that the notations should not have been admitted in evidence. They can be given no probative value.

"It naturally follows that plaintiffs' attack of the tax sale on the ground that it is invalid for want of proper assessment is not well taken.

"Plaintiffs' second ground of attack is based on the fact that William Davis, the tax purchaser, was the liquidator of the tax debtor, Riggs Cypress Co., Ltd. They employ this fact in several ways to support their argument. They contend that the breach of trust perpetrated by the liquidator on the firm and its stockholders is so grave that it strikes the sale with complete nullity and places it beyond restoration by the constitutional peremptions of three and five years or by the equitable

protection with which the law clothes purchasers in good faith who rely upon the public records. They also argue that the sale was a sham and that Davis acted fraudulently.

"The charge of fraud was not raised in the pleadings and can therefore be given no consideration.

■ "At the outset, it must be conceded that as against the Riggs Cypress Company, Ltd., and its stockholders, William Davis could not and did not acquire an indefeasible title in the tax sale. That point is no longer subject to argument in this state as one in a fiduciary position cannot validly acquire an adverse title to the beneficiary of his trust through any acts of omission or commission designedly perpetrated for that purpose. That conclusion, however, does not settle the controversy for the defendants claim that under the circumstances of this case the tax sale has been set at rest by the constitutional peremption, and because the property came to them from purchasers in good faith who relied upon the public conveyance records.

■ "The good faith of the defendants is questioned by the plaintiffs because of the recordation in the public conveyance records of the Parish of the resolution of the stockholders of Riggs Cypress Co., Ltd., appointing C. F. Borah, W. T. Peterman and William Davis as commissioners or

liquidators to liquidate the affairs of the company with full authority to wind up its affairs. The resolution is dated March 30, 1919 and was recorded in the conveyance records of Iberia Parish on October 16, 1919 at conveyance book 91, folio 560 (P-25). The resolution was therefore of record in June, 1920 when Davis purchased the property at tax sale, and, obviously, in June, 1921 when Mr. Herold and his associates purchased it from Riggs and Davis (D-8).

■■■ "We must hold that defendants' ancestors' alleged legal bad faith does not bar the defendants from pleading the constitutional peremption in repose of the tax sale. This is so because the constitutional provisions make no exception on this ground.

"Article 233 of the Constitution of 1898, in establishing the so-called peremption, provides that:

"'No sale of property for taxes shall be set aside for any cause, except on proof of dual assessment, or of payment of the taxes for which the property was sold prior to the date of the sale, unless the proceeding to annul is instituted within six months from service of notice of sale, which notice shall not be served until the time of redemption has expired, or within three years from the adoption of this Constitution, as to sales already made, and within three years from the date of recordation of the tax deed, as to sales made hereafter, if no notice is given. * * *'

"Our Supreme Court made a clear statement of this fact in the case of Cooper vs. Edwards, 152 La. 23, 92 So. 721, as follows:

"'It is true, in each of those cases, the court characterized the defendant as an innocent purchaser of the property, or a purchaser in good faith; but the question of good or bad faith—founded upon ignorance or knowledge of facts not disclosed by the public records—has nothing to do with the plea of prescription of three years, under Article 233 of the Constitution of 1898 or of 1913, or Section 11 of Article 10 of the Constitution of 1921.'

"However, our Supreme Court has had before it a number of cases involving the tax title of a co-owner that had found its way into the hands of a third person. In the hands of the co-owner equity demands that the tax sale not be given effect. The reason therefor has been stated in several ways. The most popular is that the co-owner's efforts in purchasing the common property at tax sale amounts, as far as the other owners are concerned, only to a payment of the taxes. Obviously, the constitutional peremption does not aid his efforts. However, if the tax sale is al-

lowed to remain unchallenged in the conveyance records, and it passes into the hands of another then the equitable rights of the co-owners come into conflict with the legal rights of the purchaser. And, where there is nothing in the record to reveal this latent equitable right, it has been uniformly held that he who purchases from the records has the superior title. He can avail himself of the Constitutional peremption." See, Keller v. Haas, 209 La. 343, 24 So.2d 610; Robinson v. Commercial Cattle Co. [La.App.], 82 So.2d 108; Hodgeson v. McDaniel, 233 La. 180, 96 So. 2d 481.

"Thus, in these cases the peremption provisions of the Constitution and the law protecting the innocent purchaser on the face of the public records are closely related, for, without the latter protection the purchaser could not acquire a better title than his vendor had. It is only in this type of case that there is any relation between these two legal principles. However, this question has no application here, as the plaintiffs were not co-owners nor tax debtors and have otherwise no equitable rights to plead.

"There is therefore no necessity of inquiring into the question of whether, or not, the defendants' ancestors are to be considered as innocent purchasers on the face of the public records before we determine if they can plead the constitutional peremption to set the tax sale at rest. The plea

does not conflict with any of plaintiffs' specific or equitable rights.

"However this may be, should it become necessary to determine whether Mr. Herold and his associates were in legal good, or bad, faith and are entitled to the protection of the public records, we have no trouble in coming to the conclusion that they are entitled to the protection of these records. This is so for the following reasons.

"In considering the question we must distinguish between the knowledge of facts that they could or had acquired from an examination of the public conveyance records and those they acquired dehor these records. It is only the information revealed by the public records that matters. Any other facts that they might have known is immaterial.

"There is a long and unfaltering line of decisions so holding. The landmark case in our state is McDuffie Vs. Walker, 125 La. 152, 51 So. 100. Its holding is expressed in Syllabus 1 [by the Court] which reads:

" 'The law which declares that all contracts affecting immovable property which shall not be recorded in the Parish where the property is situated "shall be utterly null and void, except between the parties thereto" (Laws 1855, P. 335, No. 274), is clear and unambiguous. It was intended to set-

tle in this state the question whether knowledge, possessed by a third person of a contract affecting immovable property should be considered, so far as such person is concerned, equivalent to the registry of the contract, and it settled that question in the negative.'

"This principle has been repeatedly reiterated. See: Schneidau Vs. New Orleans Land Co., 132 La. 264, 61 So. 225; Skannal Vs. Hespeth et al., 196 La. 87, 198 So. 661; Thompson et al. Vs. Thompson et al., 211 La. 468, 30 So.2d 321; Humphreys Vs. Royal, 215 La. 567, 41 So.2d 220; Hodgeson et al Vs. McDaniel et al., 233 La. 180, 96 So.2d 481.

"The only fact that plaintiffs claim that Mr. Herold and his associates knew or should have known that places them in the category of bad faith purchasers is that Davis was the liquidator of the Riggs Cypress Co., Ltd. at the time of the tax sale. This information, the plaintiffs claim, was contained in the conveyance records of the Parish because of the recordation of the resolution of the stockholders appointing Davis and others as Liquidators.

"The answer to that contention is that Davis' position of trust with Riggs Cypress Company vested in the company and its stockholders an equitable right to have the tax sale set aside. It did not strike the sale with absolute nullity. This equitable

right survives in the tax debtor until it is lost by inaction, or until the property is transferred to a bona fide purchaser.

"But in this case, Mr. Herold and his associates acquired all of Riggs' interest when they bought Riggs out. They become the owners of that equitable right, along with the record title of the property. The right to attack the tax sale became extinguished.

"There is another reason why the plaintiffs cannot attack the tax sale on this ground. They were not the tax debtors and the right to have the tax sale avoided on the grounds we are considering is a right founded in equity in favor of the tax debtor. It inures to the tax debtor, and not in favor of the public, because he, alone, would be defrauded if his agent were permitted to benefit through the violation of his trust. Davis did not hold any office of trust with the plaintiffs, nor with any of their ancestors, except, perhaps, those who were stockholders of Riggs' Cypress Company, Ltd., hence they never acquired the equitable right of action to have the sale set aside. As to the stockholders of Riggs Cypress Company, whatever rights they had as such they transferred to Mr. Herold and his associates when they sold the property and collected its proceeds.

"Furthermore, the resolution did not give these prospective purchasers any inkling, or notice, that the plaintiffs were making any

claim to the property. The resolution, therefore, could not possibly put the purchasers on notice of plaintiffs' claim. It is only what the public records revealed relative to plaintiffs' claim that concerns us in determining whether, or not, Mr. Herold and his associates were purchasers in good faith as relates to this action. Obviously, the resolution has nothing to do with it.

"The conclusion is therefore inevitable that Mr. Herold and his associates are entitled to the protection of the Public records in their acquisition of the tax title from Davis. Linked with the constitutional peremption, this makes their title indefeasible. There are many decisions to support this conclusion. One of the first is the case of Harris et al. Vs. Natalbany Lumber Co., 119 La. 978, 44 So. 806. Syllabus 2 [by the court] expresses its holding.

" 'Whilst it is true that, where a coowner becomes the adjudicatee of property held in indivision at a sale made for taxes for which he, in common with his co-proprietors, is liable, the sale as between him and them, operates merely as a payment of the taxes, and does not devest their title, the fact remains that, as between the owners, on the one hand, and the State and third persons without notice, on the other, and upon the face of the records, the adjudicatee becomes the owner of the property by virtue of a sale for taxes, which, under

the constitution, cannot be successfully attacked, after the lapse of three years, "except on proof of dual assessment or of payment of the taxes, for which the property was sold, prior to the date of the sale." '

"Of similar import are the holdings in: Vestal Vs. Producers' Oil Co., et al, 135 La. 984, 66 So. 334; Schwartzenberg et al Vs. Schwartzenzberg et al, 138 La. 294, 70 So. 230; Bell Vs. Canal Bank & Trust Co., 193 La. 142, 190 So. 359; Hodgeson et al Vs. McDaniel et al, 233 La. 180, 96 So.2d 481; Holland Vs. Holland [La.App.], 28 So. 2d 137.

"One of the later decisions is the case of King Vs. Moresi, 223 La. 54, 64 So.2d 841. In that case a Sheriff's wife had purchased some property at a tax sale conducted by her husband as sheriff and ex-officio tax collector. Her act was in violation of a prohibitory law, Act 94 of 1902, now [LSA-] R.S. 47:2194. This act prohibits sheriffs, tax collectors and their deputies from purchasing either directly or indirectly any property offered for sale for taxes. It provides that any such sale of property is null and void. The property fell into the community existing between the Sheriff and his wife.

"The Supreme Court maintained that the Constitutional peremption provisions set the tax sale at rest with the statement that:

" 'This constitutional preemption applies to all tax sales except those specifically excepted therein and those where the tax debtor remains in corporeal possession of the premises. The language used is very broad. This constitutional provision announces the public policy of this State to set at rest tax titles once and for all.' See, Esso Standard Oil Company vs. Jordan, 231 La. 594, 92 So.2d 377.

 "Another factor that fortifies the tax sale is the inaction of the plaintiffs and their ancestors from asserting any rights to this property over the period of many years. Although the failure to exercise any acts of ownership of property over a long period of time does not necessarily forfeit title to the property, it does serve to fortify an adversary's title, particularly a tax title.

"In this case this is particularly true because it was through the adversary's efforts that the property was made to bear its proportion of taxes. Then again, it was claimants' inaction that led Mr. Herold and his associates to pay the stockholders of Riggs the amount of $30,000.00 for this and other lands. Whatever portion of this amount went to pay for the land involved here must be presumed to have been a just consideration.

"This principle has been repeatedly employed by our courts to set at rest such titles as the defendants are here claiming."

See, Skannal v. Hespeth, 196 La. 87, 198 So. 661.

" * * * In the case of Doiron et al. vs. Lock, Moore & Co., Ltd., et al., 165 La. 57, 115 So. 366, the Supreme Court quoted with approval the following language of the District Court:

" 'The authorities are uniform that the equitable principle which protects common tenants from loss by tax adjudications to either of them also protects the adjudicatee from belated claims for reconveyance by his co-owners. They cannot indefinitely neglect their duties to the property and to their co-owner and still claim rights which rest upon those duties. "(They) cannot sleep upon this right, await developments, to see whether the property will grow in value or not, and then exercise the rights or not, according to the event." Duson v. Roos, 123 La. 835, 49 So. 590, 131 Am.St.Rep. 375; Joffrion v. Gumbel, 123 La. 391, 48 So. 1007; Cooper v. Edwards, 152 La. 23, 92 So. 721; Vestal v. Producers' Oil Co., 135 La. 984, 66 So. 334.'

"See also: Harrell et al. vs. Harrell et al., 174 La. 957, 142 So. 138; Keller et al. vs. Haas et al., 209 La. 343, 24 So.2d 610; Cannon et al. vs. Hart et al. [La.App.], 154 So. 745."

See also, Sun Oil Company v. Roger, 239 La. 379, 118 So.2d 446, rehearing refused,

March 18, 1960; Eagle **v.** Constantin, 198 La. 899, 5 So.2d 281.

■ "The equitable principle enunciated in these cases has full application here. Plaintiffs and their ancestors have made no claim to, or paid taxes on, this property for about one hundred years. Through the efforts of the defendants and their ancestors in title the property has been bearing its proportion of taxes since the year 1906. They have exercised acts of corporeal possession at least since the year 1909, without any disturbance and believing themselves to be the real owners. Their claim is entitled to be reposed under the authorities hereinabove cited.

"We must therefore hold in favor of the defendants. * * *"

In concluding his Reasons for Judgment, the trial judge observed:

"The court feels that it should not close its comments in this case without expressing its appreciation to the attorneys of the litigants who so ably and forcefully presented the issues to it. Many facts and many legal principles are involved. The gathering and presenting of these facts and the research of these legal principles presented an enormous task. The clarity and apparent simplicity in which the case was presented and very ably and completely briefed manifest plainly the many hours of labor contributed by these attorneys. Their cooperation in presenting all of the pertinent facts greatly assisted the court in the consideration of the case. For all of these, the Court remains thankful to these attorneys. Its task was thereby made much easier."

We agree with the above expressions of the trial judge. Although we have virtually adopted his able reasons, an independent examination of the record was made by us to determine the correctness of his findings.

For the reasons assigned, the judgment of the trial court is affirmed. It is ordered that the defendants (other than Mrs. Georgia Shaw Pender Lauve and Humble Oil & Refining Company) be recognized as owners of the following described property situated in the Parish of Iberia, State of Louisiana, to wit:

The East Half (E½) of Section Twenty-Three (23); the East Half (E½) of Section Twenty-six (26); and the East Half (E½) of Section Thirty-five (35), all in Township Twelve (12) South, Range Eleven (11) East, of the Southwestern Land District of Louisiana.

All costs are to be paid by appellants.

McCALEB, J., concurs in the decree.

SIMON, J., recused and not participating.