299 So.2d 481 (1974)
James A. NOE
v.
Louis J. ROUSSEL, Individually and as Liquidator of Louisiana Citrus Lands, Inc. (a Liquidated and Dissolved Louisiana Corporation), et al.
No. 5904.
Court of Appeal of Louisiana, Fourth Circuit.
August 1, 1974.
Rehearings Denied September 10, 1974.
Writs Granted November 15, 1974.
Wilkinson & Wilkinson, Hugh M. Wilkinson, James Wilkinson, III, Hugh M. Wilkinson, Jr., New Orleans, for plaintiff-appellant.
Garrett, Carl & Roussel, Clifton S. Carl, Louis J. Roussel, III, New Orleans, for defendant-appellee American Benefit Life Ins. Co.
*482 Sehrt, Boyle, Wheeler & Butler, Clem Sehrt, Peter J. Butler, New Orleans, for defendants-appellees Louis J. Roussel, Etc., and Mary G. Sandi.
Before GULOTTA and STOULIG, JJ., and BAILES, J. Pro Tem.
JULIAN E. BAILES, Judge Pro Tem.
This is an appeal by plaintiff, James A. Noe, from the judgment of the trial court dismissing his action for rescission of the sale of land by one of the defendants, Louis J. Roussel, as liquidator of Louisiana Citrus Lands, Inc., to the other defendant, American Benefit Life Insurance Company.
The facts found by the trial court, together with its reasons for judgment are set forth in writing in the record. These we quote in full:
"This matter was previously before this Court. At that time the Court recognized James A. Noe's interest in Louisiana Citrus Lands, Inc. (hereinafter called La. Citrus) but rejected his request for judicial supervision of the liquidation proceedings. This judgment was rendered on Feb. 19, 1971. James A. Noe (hereinafter called Noe) made a further application to the Court to enjoin defendant, Louis J. Roussel, Liquidator of Louisiana Citrus Lands, Inc., from selling or transferring the approximately 15,000 acres of land in Plaquemines Parish owned by La. Citrus. This case was allotted to Judge George C. Connolly, Jr., of Division "J" of this Court who rejected his request for a preliminary injunction. This judgment was signed on April 13, 1971.
"Petitioner, James A. Noe, now seeks recision of the sale of the said approximately 15,000 acres of land from Louisiana Citrus Lands, Inc., in Liquidation, to American Benefit Life Insurance Company (hereinafter called American Benefit). The sale took place on April 29, 1971 and was for a consideration of $400,000 plus 500,705 shares of common stock of the purchaser, American Benefit. While the value of the stock was not recited in the deed, the defendants accounted for same at approximately $12 per share, establishing a sale price of $6,409,600.
"On June 29, 1971, the Liquidator executed an instrument declaring that he was conveying thereby all remaining liquidation assets to the two stockholders in their respective proportions (Noe No. 2). He accordingly tendered plaintiff Noe a certificate for 104,508 shares of American Benefit common stock (20.8687% of the shares acquired in the sale of April 29, 1971) together with a check in the amount of $2,633.93, the latter representing plaintiff's pro rata of net cash.
"Petitioner Noe has alleged several grounds for recision of the aforesaid sale but his primary arguments are that the value of the property transferred by the Liquidator to American Benefit greatly exceeded the value of the consideration obtained and, secondly, that the Liquidator breached his fiduciary relationship as Liquidator since he personally owned practically all the stock in the purchasing insurance company (American Benefit).
"For the reasons hereinafter set forth, the Court rejects both arguments of plaintiff Noe.
"We have here a voluntary liquidation of Louisiana Citrus conducted out of court. The primary asset of the corporation was some 15,000 acres of unimproved land in Plaquemines Parish with a private drainage system, levee system and pumping stations, all of which had to be maintained. Furthermore, the corporation owed debts of approximately $4,000,000.
"The corporation had negotiated a sale of some 600 acres of this land to Louisiana Power & Light Company for a consideration of $4,200,000. La. Citrus would have incurred from one and one-half to two million *483 dollars in State and Federal taxes resulting from this sale unless the corporation was placed in liquidation and complied with Section 337 of the Internal Revenue Code which provided that the liquidation be completed within one year. For this reason, in 1970 the majority stockholder (American Benefit) (79.1313%) provoked the said voluntary liquidation proceedings. It should be observed that while this was undoubtedly a valid reason to liquidate the corporation, it is not necessary under the law to have any particular reason for a voluntary liquidation of a corporation as long as authorized by two-thirds of the voting power present or such larger vote of the stockholders as the articles may require (LSA-R.S. 12:142(A)).
"LSA-R.S. 12:145 C(3) specifically provides that the liquidator shall be vested with full authority:
`To sell and convey, either in whole or in part, at public or private sale, the property of the corporation, movable or immovable, on such terms and conditions as to the liquidator shall seem best, either for cash or for securities to be distributed to the shareholders.'
"LSA-R.S. 12:145 provides generally that the liquidator is to collect debts, pay obligations, dispose of the assets, pay all expenses of liquidation, and distribute what remains to the shareholders. Subparagraph G specifically provides:
'In the performance of his duties, each liquidator shall be bound to exercise that care and prudence in the listing, custody, possession, control and disposition of the property and moneys of the corporation coming into his hands, and in the proper accounting therefor, and distribution thereof, as by law is imposed upon fiduciaries.'
"The Court will now refer back to Noe's first contention which was that the consideration for the transfer of 15,000 acres of land from the Liquidator of La. Citrus to American Benefit was inadequate. Noe presented two appraisers, Omer F. Kuebel and L. X. Lamulle, who opined the market value of the 15,000 acres transferred to be $26,900,000 and $28,000,000 respectively but evaluated the acreage for an immediate sale as a single unit at $17,500,000. Defendants also produced two appraisers, Thomas B. Dupree, Jr., and Mrs. J. C. Felts, who jointly valued the entire tract at a market value of $8,070,120. They discounted the said market value for an immediate single unit sale to $6,118,765. It is significant to note that the Kuebel-Lamulle valuation for a single unit immediate sale represents about three times the Dupree-Felts valuation. Inquiry must then be made into why there is such a variance in the valuations made by these expert appraisers. There was much testimony and evidence relating to comparables, highest and best use, qualities of soil, drainage systems, levee protection, what a willing buyer and a willing seller would pay for the property etc.; but when you come down to the nitty-gritty of determining whether the price received by the Liquidator for this particular 15,000 acre tract of land was fair, it is difficult to apply, with any degree of accuracy, the general tests which are often used to fix just compensation in expropriation suits. The reason for this is that there are really no accurate comparables in the instant case.
"We must bear in mind that the Liquidator had been directed to dispose of this property in order to complete the liquidation within one year. Furthermore, this was not an ordinary type of commodity which could be easily disposed of on the open market. On the contrary, it was quite unique and presented a most difficult, if not impossible task, to dispose of it within the said time limit. Accordingly, what would be adequate consideration under these circumstances must be viewed within the spectrum of practical realities rather than based upon theoretical hypotheses. It is necessary to consider the vast size of the tract of land involved, the nature and location of the land, the tremendous *484 cost necessary to maintain and develop the land, and the length of time, if ever, within which the market could absorb this quantity of land. Value, in essence, is what you can get for it on the open market. Taking all of these factors into consideration, it is the opinion of the Court that the Dupree-Felts valuation of approximately six million dollars for an immediate single unit sale was mare realistic and acceptable than the Kuebel-Lamulle valuation. The Court further accepts as correct the value of $12 per share for the stock of American Benefit. For the foregoing reasons, the Court concludes that the consideration for the transfer of the 15,000 acres of land from the Liquidator of La. Citrus to American Benefit was fair and adequate under the circumstances.
"Finally we reach the question of whether the Liquidator (Roussel) breached his fiduciary relationship as Liquidator since he personally owned practically all the shares in the purchasing insurance company (American Benefit). In this regard we must bear in mind that there were only two stockholders in La. Citrus; approximately 20% of the stock was owned by Noe and the other 80% by American Benefit. Therefore, Roussel likewise owned practically all of the stock of the majority stockholder of La. Citrus. The law specifically provides that liquidators of Louisiana corporations are in the position of fiduciaries (LSA-R.S. 12:145(G)). While a corporate liquidator is vested with all the rights, powers and duties of the officers and board of directors of the corporation in dissolution, his primary function is to wind up, as expeditiously as possible, the affairs of the corporation. There is no prohibition in law which prevents the liquidator from selling to a purchasing corporation wherein he is the controlling stockholder. The validity of the sale depends on whether the transaction was in good faith and the consideration paid was adequate. Naturally such transactions will be closely scrutinized by the courts to determine if the transaction was fair to the dissolving corporation. In the instant case, the Court concludes that the sale was patently fair to La. Citrus and that the Liquidator (Roussel) did not breach his fiduciary relationship to the dissolving corporation (La. Citrus).
"For the foregoing reasons a judgment will be rendered in favor of defendants and against the plaintiff dismissing his suit at his cost."
It is our finding that the judgment appealed must be reversed. It is our opinion that the trial court erred in a matter of law when it concluded that defendant, Louis J. Roussel, Jr., did not breach his fiduciary obligation to the plaintiff.
For convenience herein, the parties hereto and the liquidated corporation will be sometimes referred to as follows: Plaintiff, James A. Noe, as Noe; defendant Louis J. Roussel, as Roussel; defendant, American Benefit Life Insurance Company, as American Benefit; and Louisiana Citrus Lands, Inc., as Louisiana Citrus.
By admission in his answer, Roussel owns directly or indirectly 99 per cent of American Benefit. Louisiana Citrus was owned 79.1313 per cent by American Benefit and 20.8687 per cent by Noe.
We find that the breach of Roussel's fiduciary obligations to his principal, Noe, had its inception at the commencement of the voluntary liquidation, as shown by the dissolution resolution of July 1, 1970. At this time, Louisiana Citrus owned over 15,000 acres of land located and fronting along the right descending bank of the Mississippi River for a distance of approximately 15 miles in the Parish of Plaquemines. In addition to the land, the corporation also owned certain movables and had some cash on hand. Its debts were about $4,000,000.
At the time the dissolution resolution was adopted, both Roussel and American *485 Benefit treated American Benefit as the equitable owner of all of the shares of Louisiana Citrus, despite the fact that Noe's shares were registered in the name of P. B. Gordon, an employee of Roussel. In that resolution it was provided that the liquidator (Roussel) after payment of all debts and liabilities would deliver "* * * all assets remaining, as a liquidating dividend to the said shareholder (American Benefit) of this corporation."
It is noted that as early as February 26, 1971, Noe called on Roussel, as liquidator, to amend the document entitled Unanimous Consent Authorization to Dissolve and Liquidate Louisiana Citrus Lands, Inc., Paragraph I, subparagraph (h) to provide an acknowledgment that Noe was the owner of 20.8687 per cent of the total common stock with the remainder being owned by American Benefit, and to authorize and direct the liquidator to transfer and deliver at the completion of the liquidation of this corporation any and all assets remaining, as a liquidating dividend, to the said shareholders in these proportions of ownership.
On March 2, 1971, Noe notified Roussel, liquidator, that he opposed, without his express approval and consent, any anticipated plan of the liquidation, to transfer the assets of the corporation either to him, Roussel, individually, or to American Benefit or to any other corporation or entity owned or controlled by Roussel. Further, Noe advised Roussel of his opposition to accepting any securities or stock for transfer of the assets of Louisiana Citrus, except for securities tradeable on a major exchange. According to the record, American Benefit is not traded on any stock exchange.
Further, it is to be noted that Noe, by letter dated March 16, 1971, protested the announced plan of Roussel, liquidator, to sell all of the immovable property to the highest bidder within thirty days from an advertisement of the property, first because of the bad real estate market as advised by Messrs. Gerald Pratt and Morris Hymann, local real estate agents. Secondly, such a period of thirty days was grossly insufficient to generate the requisite interest of third party purchasers in so large a tract of land. Additionally, Noe opined to Roussel that it was unrealistic to try to sell such an extensive holding by June 30, 1971, solely in order to meet the one year requirement of Section 337 of the Internal Revenue Code. He suggested dividing the land into five parcels of equal value to be apportioned between the two owners according to their respective interest of ownership, with Noe receiving in cash the percentage differential of .8687. Also, this proposal of Noe allowed for the judicial resolution of any other conflicts or adverse claims of the parties. It was the communicated contemplation of Noe that the division of the property could be confected and completed in time to meet the June 30, 1971 deadline.
All notices, suggestions and proposals of Noe were ignored by the liquidator.
In the face of the protests of Noe, the entire remaining property, after the sale of the 600 acres to Louisiana Power & Light Company, consisting of about 15,000 acres was transferred to American Benefit for $400,000 cash together with 500,785 shares of American Benefit common stock. Roussel assigned a value of $12 per share to the stock which on this basis by computation had a total value of $6,009,600. This together with the $400,000 cash reflected a reputed total sales price of $6,509,600 for the land. In the distribution of the liquidation assets to the stockholders, Noe received 104,508 shares of American Benefit common stock and $2,633.93 in cash and the Roussel-owned American Benefit received the remainder of the purchase consideration.
It must be kept in mind that this is not a case in which the liquidator has disposed of the immovable assets of a corporation in liquidation to a third party and has accepted *486 a consideration for the transfer of securities of the third party, and the minority shareholder is simply dissatisfied with the conduct of the liquidator or the securities received.
This, in fact, is a case in which the ultimate end of a liquidation plan materialized according to the initial design of the liquidator. Specific reference is made to the dissolution resolution. The position assumed by the liquidator was completely antagonistic to the rights and the consideration of the minority shareholder, Noe.
American Benefit, 99 per cent owned and/or controlled by Roussel, the liquidator, acquired title to 15,000 acres of riverfront land for the sum of $400,000 cash and 500,785 shares of its own stock. Two things are called in sharp question by Noe:
1. Lack of care and prudence by the liquidator in failing to obtain appraisal of the property prior to the sale of it to American Benefit for $6,409,600; and
2. His failure to verify by appropriate accounting procedures the actual per share value of American Benefit stock.
The result to be reached herein is clear. We find it unnecessary for Noe to show by a preponderance of the evidence that the price paid by American Benefit was wholly inadequate or far less than its real and true value.
Moreover, we find it is not necessary for Noe to prove that the structure and stability of the defendant, American Benefit, was in the dire financial distress reported by the Alabama Insurance Commission. At one point the Commission reported American Benefit was insolvent.
Defendant presented Herman Kohlmeyer, a stock broker, to establish the over-the-counter value of American Benefit stock. We are not impressed with his testimony because of the failure of this witness to divulge the name of the customer who bid $10.00 for 10,000 shares of American Benefit stock; his inability to recall a single transaction involving this stock, though he testified he had buy orders in quantity; and finally, his admission that American Benefit was a very inactive stock.
Defendants argue that the offer submitted by American Benefit to Roussel was arrived at "without participation of Roussel and without Roussel being aware until the bid was opened what the bid would be."
Even if this is true, regardless of how skillfully and discreetly the bid price was arrived at, it can not be questioned that Roussel did accept the bid of $6,509,600 submitted by American Benefit.
The most concrete evidence before us of Roussel did accept the bid of $6,409,600 sibility to Noe was his acceptance of this bid. Defendants' expert appraisers fixed the value of the property at $8,070,120. These same experts, Dupree and Felts, discounted this value for a quick sale to $6,118,765. While American Benefit bid and Roussel, as liquidator, accepted $6,409,600 for the property, this price was the sum of $1,660,520 less than its actual value established by defendants. As Noe owned 20.8687 per cent of Louisiana Citrus his proportionate share of this loss amounted to $346,528.93. It was not imperative that a sale of the property be made in order to meet the June 30, 1971 deadline for termination of the liquidation. This termination deadline could have been met and the requirements of Section 337 of the Internal Revenue Code fully complied with and satisfied by a transfer of the property in indivision to the two stockholders. (Section 337 of the Internal Revenue Code affords an avoidance of capital gains transaction on the sale of a capital asset if the corporation is liquidated within one year of the transaction).
If the property had been sold to a third party, American Benefit's pro rata of the quick sale loss would have amounted to $1,313,991.07. However, as title was transferred *487 to American Benefit, only Noe was the loser. American Benefit was the beneficiary of Noe's loss of $346,528.93. This loss of Noe's and American Benefit's gain is a breach of Roussel's fiduciary responsibility and is violative of LSA-R.S. 12:145 ¶G.
The interest of the fiduciary and the other defendant, American Benefit, are more than merely parallel. Their interest is identical. Although LSA-R.S. 12:145 C (3) abstractly authorizes the liquidator to sell and convey at private sale the property of the corporation on such terms and conditions as to him shall seem best, either for cash or for securities to be distributed to the shareholders, overshadowing and overriding such authority is the condition and restriction set out in paragraph G of the same section that in the performance of his duties, each liquidator shall be bound to exercise that care and prudence in handling all matters relative to the said performance as by law is imposed upon fiduciaries. This is particularly applicable when the liquidator sells and conveys the principal liquidation asset to a corporation which he wholly owns and accepts in payment therefor stock of questionable value from the purchaser.
In Neal v. Daniels, 217 La. 679, 47 So.2d 44 (1950), in considering the conduct of an employee or agent as it affects the obligation of fidelity owed the principal, and quoting from an older case, the court stated:
"`* * *. The employee is duty bound not to act in antagonism or opposition to the interest of the employer. Every one, whether designated agent, trustee, servant, or what not, who is under contract or other legal obligation to represent or act for another in any particular business or line of business or for any valuable purpose, must be loyal and faithful to the interest of such other in respect to such business or purpose. He cannot lawfully serve or acquire any private interest of his own in opposition to it. This is a rule of common sense and honesty as well as of law. * * *.'"
Then in Ewald v. Hodges, 239 La. 883, 120 So.2d 465 (1960), although not controlling of the ultimate decision therein, the Supreme Court stated in referring to the acquisition of title at tax sale of property of the corporation that:
"`At the outset, it must be conceded that as against the Riggs Cypress Company, Ltd., and its stockholders, William Davis could not and did not acquire an indefeasible title in the tax sale. That point is no longer subject to argument in this state as one in a fiduciary position cannot validly acquire an adverse title to the beneficiary of his trust through any acts of omission or commission designedly perpetrated for that purpose.'"
In Meinhard v. Salmon, 249 N.Y. 458, 164 N.E. 545, 62 A.L.R. 1, the court set forth the principles governing the personal transactions of fiduciaries involving the conflicting interest of the principal. The court said:
"Many forms of conduct permissible in a workaday world for those acting at arm's length are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate."
In Pepper v. Litton, 308 U.S. 295, 60 S. Ct. 238, 84 L.Ed. 281 (1939), the court stated:
"`A director is a fiduciary. Twin-Lick Oil Company v. Marbury, 91 U.S. 587, 588, 23 L.Ed. 328. So is a dominant or controlling stockholder or group of stockholders. Southern Pacific Company v. Bogert, 250 U.S. 483, 492, 39 S.Ct. 533, 537, 63 L.Ed. 1099. Their powers are powers in trust. See Jackson v. Ludeling, 21 Wall. 616, 624, 22 L.Ed. 492.

*488 Their dealings with the corporation are subjected to rigorous scrutiny and where any of their contracts or engagements with the corporation is challenged the burden is on the director or stockholder not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein. Geddes v. Anaconda Copper Mining Company, 254 U.S. 590, 599, 41 S.Ct. 209, 212, 65 L.Ed. 425. The essence of the test is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain. If it does not, equity will set it aside.' (Emphasis added) (308 U.S. 295, 306, 60 S.Ct. 238, 245)"
Defendant, American Benefit, has filed a motion to dismiss this appeal on the ground that the dispute between Noe and it is moot. In its motion, American Benefit states that the property involved herein has been sold and consequently any issues of rescission are moot and this suit should be dismissed.
The motion is denied. The mover cannot divest this court of its appellate jurisdiction by the subterfuge of alienating the liquidation assets to third parties, and the orderly process of justice to be flouted and circumvented in such fashion.
For the foregoing reasons, the judgment appealed is reversed and set aside and the sale of the subject land, and any and all movables and other property whatever by Louis J. Roussel, liquidator of Louisiana Citrus Lands, Inc. to American Benefit Life Insurance Company be and the same is annulled, avoided and set aside.
It is further ordered that the collateral mortgage executed by American Benefit Life Insurance Company dated April 29, 1971, recorded in MOB 67, Folio 533 of Plaquemines Parish, Louisiana be and it is hereby annulled and rescinded.
It is further ordered, adjudged and decreed that the consideration paid for the subject land be returned to American Benefit Life Insurance Company.
It is further ordered, adjudged and decreed that all assets in liquidation of Louisiana Citrus Lands, Inc., be and the same are hereby transferred to American Benefit Life Insurance Company and James A. Noe in indivision with American Benefit Life Insurance Company the owner of 79.-1313 per cent thereof, and James A. Noe the owner of 20.8687 per cent thereof, and that these co-owners assume their corresponding share of any indebtedness of Louisiana Citrus Lands, Inc., in the final liquidation thereof. Defendants-appellees are cast for all court costs of this case in both the district court and in this court.
Reversed and rendered.
GULOTTA, Judge (dissenting).
I respectfully dissent.
It appears that the resolution of the dispute in the instant case rests on two questions. The first is whether Roussel violated a fiduciary relationship as liquidator of Louisiana Citrus and secondly whether the price paid to Louisiana Citrus was fair and equitable considering the nature and circumstances of the sale. The determination of the first question is, to a large extent, dependent on a determination of the second, i. e., whether the price paid for the 15,000 acres was fair and equitable. In this connection, the appraised value of the land in question and the value of the stock of American Benefit are controlling factors. These are factual determinations resolved by the trial judge in favor of the liquidator, Roussel. The trial judge in written reasons stated:
"Taking all of these factors into consideration it is the opinion of the Court that the Dupree-Felts valuation of approximately $6,000,000 for an immediate single unit sale was more realistic and equitable than the Keubel-Lamulle valuation. The Court further accepts as correct the value of $12.00 per share for the *489 stock of American Benefit. For the foregoing reasons, the Court concludes that the consideration for the transfer of the 15,000 acres of land from the liquidator of Louisiana Citrus to American Benefit was fair and adequate under the circumstances."
A consideration of the record, in my opinion, supports the factual conclusions of the trial judge. He accepted the valuation of defendant's appraisers and rejected those of plaintiff's on the land value. I cannot say that, in this, he erred. Nor can I conclude from the record that the acceptance by the trial judge of a $12.00 per share value for the stock of American Benefit is in error.
Counsel for the liquidator in the course of the trial tendered the sum of $10.00 per share for the stock owned by Noe.[1] James H. Horn, Director, Vice-president and Assistant Secretary of American Benefit Life Insurance Company placed a value on the stock at $12.10 per share. Further, Herman Kohlmeyer, partner of Kohlmeyer & Co., stockbrokers, testified that he has purchase orders for stock of American Benefit from people other than Roussel at $10.-00 per share. Roussel stated that $12.10 per share was available to Noe in November, 1971.
While transactions involving the purchase by the liquidator of the assets of the liquidating corporation are specific and must be carefully scrutinized,[2] the test is whether the price paid is fair and equitable and whether the transaction is in good faith.[3]
Having found no error in the trial court's determination of value, I cannot conclude that Roussel breached his fiduciary relationship. Accordingly, I am of the opinion the judgment should be affirmed.
I respectfully dissent.
NOTES
[1] The record contains the $10.00 per share tender as well as a statement that an offer of $12.10 per share had been tendered previously to counsel for Noe within 60 days after the close of the liquidation (June 30, 1971). This was not denied nor disputed.
[2] House of Campbell, Inc. v. Campbell, 172 So. 2d 727 (La.App.1965).
[3] LSA-R.S. 12:84; General Motors Acceptance Corp. v. Hahn, 190 So. 869 (La.App. 1939); House of Campbell, Inc. v. Campbell, supra.